PHILLIP E. QUINNETT, ADMINISTRATOR (ESTATE OF
BENJAMIN L. QUINNETT) *v.* VIRGINIA NEWMAN ET AL.
(13704)

PETERS, C. J., SHEA, CALLAHAN, COVELLO and HULL, JS.

Argued October 6, 1989—decision released January 2, 1990

*F. Timothy McNamara,* for the appellant (plaintiff).

*Thomas J. Keramidas,* for the appellees (defendant Brett Kerr et al.).

COVELLO, J. The plaintiff, Phillip E. Quinnett, as administrator of the estate of his five year old son, Benjamin L. Quinnett, brought this action seeking damages for the wrongful death of his son. The dispositive issue is whether a common law cause of action in negligence or public nuisance exists against a commercial vendor who sells intoxicating liquor to an adult who thereafter, by reason of his intoxication, injures another. We conclude that neither a common law negligence action nor a public nuisance action against the vendor exists under such circumstances, the legislature having filled this field through the enactment of General Statutes § 30-102. Therefore, we find no error.

The jury might reasonably have found that on December 1, 1983, at approximately 5:15 p.m., Gary Mastrobattisto stopped at Gindee's bar in New Haven, an establishment operated by the defendants Virginia Newman and Gindee's Corporation, where he remained for two to three hours. During that time, Mastrobattisto consumed three shots of tequila and six twelve ounce bottles of beer. He thereafter drove to Pickles bar in Branford, an establishment operated by the defendants Brett Kerr and Pacarrie, Inc. (defendants), where he remained for an additional two to three hours. While there, Mastrobattisto drank three more shots of tequila and six more twelve ounce bottles of beer. Shortly after leaving Pickles bar, Mastrobattisto drove his vehicle across the highway into the lane for oncom-

ing traffic and struck the car carrying the plaintiff's decedent, causing the injuries that thereafter led to his death.

The suit involving Gindee's bar was resolved by stipulated judgment. The case involving Pickles bar was thereafter submitted to the jury solely on the issues of wanton and reckless misconduct. See *Kowal* v. *Hofher,* 181 Conn. 355, 359–62, 436 A.2d 1 (1980). The trial court, *J. Flanagan, J.,* directed the jury to render a verdict for the defendants on the remaining counts of the complaint, concluding that, as a matter of law, there is no cause of action based upon negligence or public nuisance in selling alcohol to an adult who thereafter injures another by reason of his intoxication. The jury returned a verdict in favor of the defendants on the recklessness count and as directed by the court on the remaining counts. The trial court denied the plaintiff's motion to set aside the verdicts on counts one, two, three and four and thereafter rendered judgment for the defendants. The plaintiff appealed to the Appellate Court. We then transferred the appeal to ourselves pursuant to Practice Book § 4023.

On appeal, the plaintiff claims that the trial court erred: (1) in failing to charge the jury as requested on the issues of negligence and public nuisance; (2) in directing a verdict in favor of the defendants on those counts that alleged negligence and a public nuisance; and (3) in denying his motion to set aside the verdicts. We find no error.

At common law there is no cause of action based upon negligence in selling alcohol to adults who are known to be intoxicated. "While such acts may constitute the breach of a duty owed to others, the cause of action in a variety of factual settings has uniformly failed for the reason that the subsequent injury has been held to have been proximately caused by the intervening act

of the immoderate consumer whose voluntary and imprudent consumption of the beverage brings about intoxication and the subsequent injury. *Boehm* v. *Kish,* 201 Conn. 385, 389, 517 A.2d 624 (1986); *Kowal* v. *Hofher,* [supra, 357–58]; *Slicer* v. *Quigley,* 180 Conn. 252, 255–56, 429 A.2d 855 (1980); *Nelson* v. *Steffens,* 170 Conn. 356, 358–59, 365 A.2d 1174 (1976); *Moore* v. *Bunk,* 154 Conn. 644, 647, 228 A.2d 510 (1967); *Nolan* v. *Morelli,* 154 Conn. 432, 436, 226 A.2d 383 (1967)." *Ely* v. *Murphy,* 207 Conn. 88, 92–93, 540 A.2d 54 (1988).

In *Ely* v. *Murphy,* supra, we recognized a limited exception to this long-standing proposition and held that the consumption of alcohol by a minor did not "constitute the intervening act necessary to break the chain of proximate causation and does not, as a matter of law, insulate one who provides alcohol to minors from liability for ensuing injury." Id., 95. The basis of this holding lay in the fact that minors, by reason of their youth, lacked the legal capacity "voluntarily" to consume alcohol and, therefore, the fact that they did so, did not, as a matter of law, break any chain of proximate causation that might otherwise exist. Id.

The plaintiff argues, however, that so long as the defendant sellers' conduct was a substantial factor in producing the plaintiff's injury, it becomes a question of fact in all events as to whether the subsequent consumption of alcohol breaks the chain of proximate causation. See, e.g., *Merhi* v. *Becker,* 164 Conn. 516, 521, 325 A.2d 270 (1973); *Miranti* v. *Brookside Shopping Center, Inc.,* 159 Conn. 24, 29–30, 266 A.2d 370 (1969). "However, proximate causation is [also] a matter of public policy and therefore subject to the changing attitudes and needs of society. [W. Prosser, Torts (4th Ed. 1971), pp. 206, 244–45.]" *Vance* v. *United States,* 355 F. Sup. 756, 761 (D. Alaska 1973). Despite the assertions made by the minority in their dissenting opinions,

the issue is not whether one disapproves of irresponsible drinking and its too often tragic results on the highways and roadways of our state, but rather, whether this court can intrude where the legislature has so clearly chosen to act. To the extent that the General Assembly sees fit to articulate public policy through specific legislation, we are bound to honor the means by which it addresses the policy issue in question.

"In Connecticut, as far back as 1872, it came to be felt that the . . . common-law rule [limiting the liability of purveyors of alcohol] was to some extent overly harsh and should be modified by statute. . . . The 1872 act gave a cause of action against a seller who sold intoxicating liquor to a person who thereby became intoxicated for 'any damage or injury to any other person, or to the property of another' done by the intoxicated person 'in consequence' of his intoxication. Thus, this act, in situations where it was applicable, displaced the common-law rule that the proximate cause of intoxication was not the furnishing of the liquor but its consumption." *Nolan* v. *Morelli,* supra, 437. The modern version of this so-called civil damage or dram shop act is General Statutes § 30-102.[1] Despite numerous amendments throughout its one hundred twenty-nine year history, the act's applicability remains essentially unchanged.

Unlike the social host-minor guest situation found in *Ely* v. *Murphy,* supra, which is not addressed in § 30-102, we are here confronted with a tavern seller-adult patron situation, the precise factual circumstance

[1] General Statutes § 30-102 provides in relevant part: "If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars, to be recovered in an action under this section."

contemplated by § 30-102. This being the case, we defer to the legislative policy as it is articulated by § 30-102 and leave the plaintiff to the remedy set forth therein.

It appears that an important reason for the plaintiff to seek to abrogate the common law rule is to avoid the financial limitations imposed by § 30-102.[2] "Changing the limitation is a matter for the legislature. If the damage limitation is inadequate, then the proper remedy is to increase the statutory limitation by legislative enactment rather than by overturning established judicial principles and precedents." *Nelson* v. *Steffens,* 170 Conn. 356, 361, 365 A.2d 1174 (1976), overruled on other grounds, 207 Conn. 88, 95, 540 A.2d 54 (1988).

The plaintiff further claims that the trial court erred in refusing to charge the jury as requested on public nuisance and in directing a verdict in favor of the defendants on those counts of the complaint that alleged the defendants' creation of a public nuisance. He argues that the sale of substantial amounts of alcohol to one who thereafter operates a motor vehicle upon a public highway is analogous to the types of acts that have been held to be public nuisances.

A nuisance, whether public or private, describes an inherently dangerous condition that has a natural tendency to inflict injury upon persons or property. *State* v. *Tippetts-Abbett-McCarthy-Stratton,* 204 Conn. 177, 183, 527 A.2d 688 (1987). The term nuisance refers to the condition that exists and not to the act or failure to act that creates it. If the creator of the condition intends the act that brings about the condition found to be a nuisance, the nuisance thereby created is said to be absolute and its creator is strictly liable. *DeLahunta* v. *Waterbury,* 134 Conn. 630, 633–34, 59 A.2d 800 (1948). If the condition claimed to be a nuisance

---

[2] General Statutes § 30-102 limits damages to $20,000 per injured person up to an aggregate amount of $50,000. See footnote 1, supra.

arises out of the creator's unintentional but negligent act, i.e., a failure to exercise due care, the resulting condition is characterized as a negligent nuisance. *Kostyal* v. *Cass,* 163 Conn. 92, 98–99, 302 A.2d 121 (1972). "[T]he only practical distinction between an absolute nuisance and one grounded in negligence is that contributory negligence is not a defense to the former but may be as to the latter." Id., 99.

In order to establish a cause of action in nuisance, the plaintiff must prove that the inherently dangerous condition is a continuing one and was the proximate cause of the plaintiff's injuries and damages. *State* v. *Tippetts-Abbett-McCarthy-Stratton,* supra.

In the present context, the inherently dangerous condition claimed to constitute a nuisance is the intoxicated adult operator of the motor vehicle. The proximate cause of the adult motorist's intoxicated condition, however, lies in his own immoderate use of the alcohol and not in its service to him by the defendant sellers. *Ely* v. *Murphy,* supra, 95. Since the alleged act of the purveyors' cannot be the proximate cause of the injuries and damages that thereafter followed, the nuisance claim is fatally flawed and the trial court correctly struck this count from the amended complaint and properly withdrew it from the jury's consideration.

There is no error.

In this opinion SHEA and CALLAHAN, Js., concurred.

PETERS, C. J., dissenting. Although, I agree with the majority opinion's resolution of the issue of nuisance, I respectfully dissent from its conclusion that the plaintiff cannot recover on a claim of negligence. I am unpersuaded that the result reached by the majority continues to find support in law or in reason.

I believe that the time has come for this court to recognize a common law cause of action, sounding in negligence, for the sale of intoxicating beverages to someone who, because of his intoxication, thereafter injures an innocent bystander on our public highways. Studies too numerous to replicate have demonstrated, time and time again, the strong connection between excessive consumption of alcohol and violent traffic accidents. See, e.g., *Shore* v. *Stonington,* 187 Conn. 147, 162, 444 A.2d 1379 (1982) (*Peters, C. J.,* dissenting); *Slicer* v. *Quigley,* 180 Conn. 252, 264–67, 429 A.2d 855 (1980) (*Bogdanski, J.,* dissenting).[1] The hapless victim in this case was simply another statistic in a long line of similar victims, killed by a driver who, after the con- sumption of a great deal of liquor at a bar, crossed the median line on the highway and drove his car into oncoming traffic. Enough is enough. This court should no longer be the roadblock that prevents a jury from considering whether, as a matter of fact, a commer- cial vendor of alcohol has taken suitable precautions, has observed reasonable care, to avoid injury to those who are foreseeably at risk and whose injuries are in fact proximately caused by the sale of alcohol.

The existing state of the law does not, in my view, prevent us from joining the vast majority of state and federal courts that, since 1971, have rejected or modi- fied judicial rules that provide immunity from damages for those who furnish alcoholic beverages in circum- stances that proximately cause injury to innocent third parties. See cases listed in *Ling* v. *Jan's Liquors,* 237 Kan. 629, 648–51, 703 P.2d 731 (1985), and in *Slicer*

---

[1] In 1989, the state department of transportation released "Connecticut Traffic Accident Facts" indicating that, in 22 percent of the fatal accidents on Connecticut highways, the driver was influenced by alcohol or drugs. The National Safety Council's Accident Facts, 1989 Edition, reports that each year, nationwide at least 24,000 people are killed and about 534,000 people are injured by alcohol-related motor vehicle accidents.

v. *Quigley,* supra, 269–71. Neither our case law nor our statutory law, fairly read, compels the result that the majority opinion reaches today.

Our modern case law on this issue has its roots in *Nolan* v. *Morelli,* 154 Conn. 432, 226 A.2d 383 (1967). Although that case contains a scholarly exegesis on the relationship between the law of negligence and the Dram Shop Act, its reasoning repeatedly notes the incongruity of imposing liability on a seller of alcohol for injuries suffered by the intoxicated party himself. See, e.g., id., 441. Those were the circumstances in *Nolan,* but they are not the circumstances of this case, which involves injury to an entirely innocent third party. On its facts, *Nolan* is therefore distinguishable.

*Nolan* v. *Morelli,* supra, casts a broader shadow only insofar as it emphasizes a common law theory of causation that purports to cut off all liability for negligent conduct upon the occurrence of any independent intervening acts. According to *Nolan,* no vendor could ever be liable in tort for furnishing intoxicating liquor, because, as a matter of proximate cause, any injury resulting from intoxication depended upon the intervening act of the purchaser's raising his glass to consume the alcohol. Id., 436–37.

Subsequent cases have, however, reconsidered and abandoned this narrow view of proximate cause. Since 1969, this court has adopted the formulation of proximate cause contained in 2 Restatement (Second), Torts § 442B (1965). See, e.g., *Kiniry* v. *Danbury Hospital,* 183 Conn. 448, 455, 439 A.2d 408 (1981); *Merhi* v. *Becker,* 164 Conn. 516, 522, 325 A.2d 270 (1973); *Miranti* v. *Brookside Shopping Center, Inc.,* 159 Conn. 24, 28, 266 A.2d 370 (1969). Contrary to *Nolan,* these cases stand for the proposition that the basic test of causation is whether a defendant's negligent conduct created the risk of a particular harm and was a sub-

stantial factor in causing that harm. If that causal connection can be factually shown, an injured plaintiff may recover, unless the harm is *intentionally* caused by a third person or is outside the scope of the risk created by the negligent conduct. In *Merhi,* for example, we upheld the liability of a union that sponsored a picnic where alcohol was served, when an inebriated union member drove his car into a group of picnickers and injured one of them. *Merhi* v. *Becker,* supra, 522. More recently, in *Ely* v. *Murphy,* 207 Conn. 88, 540 A.2d 54 (1988), we held that the negligent furnishing of alcohol to minors gave rise to a cause of action for the victim of the minor's inebriated driving. We concluded that a minor is legally incapable of undertaking the measured responsibility for his ingestion of alcohol that would "constitute the intervening act necessary to break the chain of proximate causation . . . ." Id., 95.

As a common law matter, this case law development entirely undermines the proximate cause reasoning of *Nolan* v. *Morelli,* supra. It is illogical to continue the fiction that the behavior of anyone who is under the influence of alcohol is automatically, as a matter of law, an intentional intervening act that relieves the liability of a vendor of alcohol even though the vendor's negligence is otherwise established. In the criminal law, we have long acknowledged that intoxication may impair a defendant's capacity to commit a crime requiring proof of specific intent. General Statutes § 53a-7; *State* v. *Vinal,* 198 Conn. 644, 658–59, 504 A.2d 1364 (1986); *State* v. *Stevenson,* 198 Conn. 560, 568–69, 504 A.2d 1029 (1986). If intoxication gives rise to a jury question about rational intent for criminal law purposes, it should similarly permit a jury to determine whether the drinker's behavior undermined his capacity to take responsibility for his conduct for tort purposes.

The only issue that remains, therefore, is whether we should stay our hand because the legislature, in enacting the Dram Shop Act, General Statutes § 30-102, has filled the field. Like our Workers' Compensation Act, this act embodies a tradeoff. Compared to a traditional common law action for negligence, the recovery allowed by the act is available upon a lesser showing of causality; *Nolan* v. *Morelli*, supra, 438; but is commensurately less generous in its award of damages. Unlike our Workers' Compensation Act, however, § 30-102 contains no language comparable to General Statutes § 31-284 (a), expressly precluding common law liability. Indeed, General Statutes § 30-86 imposes criminal liability on someone who "sells or delivers alcholic liquor . . . to any intoxicated person." I do not believe that, read in its entirety, this legislative record demonstrates a conscious decision by the legislature to displace existing common law precedents or to enjoin further common law developments.

It is worth noting, finally, that the majority opinion contains the seeds of an anomalous distinction. Two classes of providers of alcohol may possibly incur liability for serving alcohol to adults who, after conspicuous inebriation, cause serious injuries to innocent third parties. The providers are, on the one hand, those who are in the business of selling and serving alcohol, and, on the other hand, those who entertain social guests. From any policy point of view, the merchants who trade in alcohol would normally, like other merchants of goods, be expected to undertake the greater liability for the injuries that they directly or indirectly cause. See, e.g., General Statutes § 42a-2-314. Today's majority opinion, by contrast, offers substantial immunity only to those who are in the business, and can therefore take shelter under the Dram Shop Act. Yet those in the business not only stand to profit from pressing alcohol upon a customer who has already overin-

dulged but are in the better position to acquire the training to recognize when their customer, and those with whom he may interact, are at risk. Absent a clearer signal from the legislature, I am persuaded that we should not assume so irrational a result.

Accordingly, I respectfully dissent.

HULL, J., dissenting. I concur with the impeccable logic and strong dissent of the Chief Justice. As Victor Hugo said: "Greater than the tread of mighty armies is an idea whose time has come." Histoire d'un Crime (1852). The theory on which the existing law is based is an aberration in negligence law and an affront to the memory of the five year old victim in this case.

Judges, like it or not, are part of society. As such, we cannot be blind to changing social mores. A national wave of revulsion has arisen against the frightful tragedies caused by drunken drivers. I take judicial notice of the efforts of MADD, SADD and RID, as well as certain determined Connecticut legislators, to curb such atrocities. The driver in this present case had consumed twelve bottles of beer and six shots of tequila at two bars before he lurched to his car to drive on the highway and snuff out an innocent life.

The continued existence of the present law is a blot on the social conscience and will, sooner or later, be corrected by this court. Why not now?