[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a civil action brought by Pauline and Alfred Coco, husband and wife and residents of the Town of Wethersfield, against the Town of Wethersfield. Plaintiffs have filed a verified complaint with six counts. The first count alleges a nuisance in which the plaintiffs claim that the defendant is presently channeling, diverting, discharging and draining surface and storm water and other materials from neighboring properties and the municipal storm sewer system onto the plaintiffs' land where it accumulates and remains standing causing a nuisance and impairing the beneficial use and enjoyment of said land. CT Page 12652-A
The second count alleges a violation of Section 22a-36 et seq. C.G.S., the Inland Wetlands Statute and a violation of the Wethersfield Inland Wetlands Regulations for conducting regulated activities within Inland/Wetlands areas without a permit.
The third count alleges a violation of section 22a-14 et. seq. C.G.S., the Environmental Protection Act of 1971, for allowing and/or causing pollution, impairment or destruction of such wetland area in contravention of the public trust.
The fourth count alleges that by virtue of the aforesaid acts, the defendant is trespassing on the plaintiffs' land.
The fifth count alleges a taking of the plaintiffs' property without compensation in violation of the Fifth Amendment to the Constitution of the United States and ArticleFirst, Section 11, of the Constitution of the State of Connecticut.
In the sixth count the plaintiffs allege that the acts of the defendant constitute a deprivation of the plaintiffs' property without due process of law in violation of the Fourteenth Amendment and the Fifth Amendment to the CT Page 12652-B Constitution of the United States.
As to counts one through four, the plaintiffs allege that they have no adequate remedy at law.
The plaintiffs claim a temporary and permanent injunction and order: (1) Restraining the defendants from channeling, diverting, discharging and draining surface and storm water and other materials onto the plaintiffs' land; (2) Requiring the defendant to remove the drainage pipe existing on the plaintiffs' land and to restore all areas disturbed by said pipe and removal thereof to their natural condition; (3) Pursuant to Section 22a-44 (b) C.G.S. to restrain the defendant from channeling, diverting, discharging and draining materials into the Inland/Wetland areas on the plaintiffs' land; (4) Pursuant to Section 22a-18 C.G.S., restraining the defendant from polluting, impairing and destroying the Inland/Wetlands area by channeling, diverting, discharging and draining materials into said areas; (5) Costs, fees, expenses and reasonable attorney's fees pursuant to Section 22a-44 (b) C.G.S.; (6) Fines and civil penalties pursuant to Section22a-44 (b) and 22a-44 (c) C.G.S.; (7) Costs and reasonable attorney's fees pursuant to Section 22a-18 (e) C.G.S.; (8) Money damages; (9) Reasonable attorney's fees; (10) Interest and costs. CT Page 12652-C
Defendant has filed an answer denying all of the operative allegations of the plaintiffs' complaint and in addition thereto, it has filed fifteen amended special defenses. The first special defense alleges the consent of the plaintiffs to the installation of drainage pipes onto the property thus relinquishing their rights in granting a waiver as to the drainage of water through the eastern portion of the property. The second special defense alleges a prescriptive easement on the drainage flowing through the plaintiffs' property through an existing watercourse culvert on Two Rod Highway. The third special defense alleges an easement by necessity or by adverse possession alleging that because of the natural flow of water and the contours of the area, the method used by the defendant to drain the water is the only available method. The fourth special defense alleges a failure to exhaust administrative remedies and pertains to count 2. The Town's position is that the Inland/Wetlands and Watercourse Regulations of the Town of Wethersfield provide for review by the Commission of any allegations brought before it and that failure of plaintiffs to seek this review indicates that they failed to exhaust their administrative remedies. For its fifth special defense, the Town alleges that the plaintiffs lack standing to bring the action designated as count 2 inasmuch as only the Inland/Wetlands CT Page 12652-D Agency as agents of the Commission can bring the action and the request for relief contained in that count. In its sixth special defense, the Town alleges that the plaintiffs lack standing to bring the action designated as count 3 since the Environmental Protection Act of 1971, re pollution impairment or destruction of wetlands, is for the protection of the "public trust" and plaintiff's claim is for a private recovery of damages or an injunction aimed at protecting its own "private interest." The seventh special defense which pertains to counts 2 and 3 alleges that even if the plaintiffs make a prima facia showing of their claim, this can be rebutted by a showing that defendant's conduct is reasonable and is consistent with the requirements of the Public Health, Safety and Welfare. The eighth special defense pertaining to the trespass claim of count 4, pleads the Statute of Limitations, Section 52-577 C.G.S. In its ninth special defense the Town claims that counts five and six are barred by a prior pending action which raises the same or substantially the same claim with the same parties. In the tenth special defense, the defendant pleads governmental immunity as to counts one, two, three and four. In the eleventh special defense, the defendant pleads laches claiming that five subdivisions have gone into the area since 1973 and the plaintiffs did not seek to intervene or appeal any of the subdivision approvals and that the defendant has been CT Page 12652-E prejudiced by the plaintiffs' failure to address these concerns as part of the development process without cost to the Town of Wethersfield. The twelfth special defense alleges that counts one, two and three are barred by the statute of limitations contained in Sections 52-577, 52-578 and 52-584
C.G.S. In the thirteenth special defense the defendant claims that counts one, two and three are barred by the statute of limitations contained in Section 13a-138 (a) C.G.S. In the fourteenth special defense the defendant alleges that the actions complained of in counts one through four of the plaintiffs' complaint are expressly authorized by C.G.S. Section 13a-138.
At the request of the attorneys for both parties, the court viewed the premises involved in this case.
The parties entered into a stipulation of facts which is incorporated into the finding of facts hereinafter set forth.
This case involves drainage of surface and storm sewer water onto two parcels of land. The first is located to the rear of premises known as 119 Two Rod Highway, Wethersfield, and the other is a certain parcel of land consisting of approximately 6.75 acres located on Two Rod Highway. This parcel has a very narrow frontage on Two Rod Highway and CT Page 12652-F extends northerly by means of a narrow strip then extending both east and west behind lots on Two Rod Highway to the west abutting the first parcel. See Exhibit "A" attached. The first parcel adjoins certain open spaces owned by the Town of Wethersfield to the west.
The plaintiffs have alleged ownership of these parcels but failed to introduce deeds to the property to establish said ownership. The court finds, however, that there is sufficient evidence in the record unrefuted by the defendant so that it can make a finding that the first parcel is owned jointly by Pauline Coco and Alfred Coco and the second parcel is owned by Pauline Coco. The plaintiffs reside in the property at 119 Two Rod Highway which they own jointly.
The parcels in question are undeveloped land located in a residential area of single family homes on the north side of Two Rod Highway. Although the property is presently undeveloped, the plaintiff, Pauline Coco, has received a building permit to construct a single family dwelling on the 6.75 acre parcel to the east of the first parcel and behind lot #105 with access to it over the narrow strip from Two Rod Highway. Large portions of the premises have been designated as Inland/Wetlands (the "Coco Wetlands"). CT Page 12652-G
The Town owns open space property generally to the south of Two Rod Highway (the "Amato open space") and the Town also owns open space immediately to the west of the first parcel and north of 127 Two Rod Highway (the "rear open space"). A pipe or culvert owned by the defendant runs from the Amato open space under Two Rod Highway and into the second parcel (the "Amato/Coco culvert"). The Town owns open space property to the west of the premises on the south side of Two Rod Highway between streets known as Marshall's Meadow and Dennison Ridge ("Marshall's Meadow open space"). The Town owns and/or maintains a pipe or culvert running generally northward from the Marshall's Meadow open space under Two Rod Highway into a trapezoidal drainage ditch (the "Marshall's Meadow culvert"). Water runs through this ditch northward between lots #187 and 177 and turns eastward behind lots #177, 169, 150 and 151 under old Reservoir Road through a culvert and continues behind lot #135 and 127 into the rear open space behind lot #127 owned by the Town which open space is to the west of the first parcel as mentioned above. The Town owns storm water and surface water drainage systems in streets known as a) Two Rod Highway, b) Bay Roc Road, c) Marshall's Meadow, d) Dennison Ridge, e) Liberty Hill East, f) Glory Lane and g) Old Reservoir Road. CT Page 12652-H
The plaintiffs filed no relevant objection in any application proceeding concerning the development of any subdivision including streets known as a) Two Rod Highway, b) Amato Drive, c) Bay Roc Road, d) Marshall's Meadow, e) Dennison Ridge, f) Liberty Hill East, g) Glory Lane, h) Patriot Lane, i) Old Reservoir Road. The Town has not yet accepted conveyance of streets in the Amato III subdivision.
The following subdivisions have been built or are presently under construction in the general area: a) Old Reservoir Road Section I approved by the Town 1972, b) Old Reservoir Road Section II approved by the Town 1973, c) Amato Section I approved by the Town 1977, d) Amato Section II approved by the Town 1979, e) Amato Section III approved by the Town 1980, f) John Oldhams approved by the Town 1984, g) Jefferson Estates approved by the Town 1987, h) Lindstrom Estates approved by the Town 1994. In all of the developed areas, the Town has constructed catch basins and a municipal storm sewer system which channels surface and storm water.
The natural flow of water in this general area to the north of Two Rod Highway would be from the areas to the west of the parcels in question, to the east eventually into the open space owned by the Town and the parcels owned by the CT Page 12652-I plaintiffs and into an old reservoir which is to the north of the 6.75 acre parcel. As to the properties to the south of 2 Rod Highway, the natural flow would be from the Dennison Ridge area into the Marshall's Meadow open space, as to the area north of Marshall's Meadow, and would be from the Bay Rock Road area and the Amato Drive area into the Amato open space.
A pipe or culvert runs from the north side of Two Rod Highway in the general area of Liberty Hill and Patriot's Lane under Two Rod Highway into the Marshall's Meadow open space. Thus there is some diversion from the natural flow on the north side of Two Rod Highway into the Marshall's Meadow open space. However, the water collected in the Marshall's Meadow open space then drains northward through the pipe or culvert running under Two Rod Highway to the ditch, thus restoring that water to the area where it again is flowing east through the ditch. The water in the ditch flows eventually into the open space and to some extent into the first parcel and also into the second parcel. Water from the Amato open space flows generally north through a culvert under Two Rod Highway into the narrow strip described above in the second parcel. This culvert, unlike those mentioned above which traverse simply the width of the road, extends for a substantial distance under the narrow strip described above. It runs far enough to provide an access to the property where the house is now under CT Page 12652-J construction. Water is then disbursed into the wetlands of the second parcel.
As a general principle, the construction of houses, roofs, yards, walkways, paved streets and other improvements in a given area will create a greater volume of surface and storm water runoff. This increased surface and storm water runoff flows into the Marshall's Meadows open space from the area to the west of the plaintiffs' property and into the Amato open space from the area to the south of said property. The defendant has utilized accepted engineering practice which routinely occurs in the State of Conn. in designing and building its catch basin and storm sewer systems. The court is not convinced that the increase in volume of water caused by the development of this land has any adverse effect on the property of the plaintiffs. Said water spreads out into and is collected in the two open space areas and there was insufficient evidence that the flow through the culverts into the ditch and into the plaintiffs' land is any worse because of the developmental runoff.
The plaintiffs were unable to produce any "before and after" comparison of the volume of water through this system and insufficient evidence was produced to prove any damage to the plaintiffs' property or any impairment of its beneficial CT Page 12652-K use. The property in question has been in a HUD designated flood zone since May 1977, revised as of February 2, 1982 and this property has been designated as Inland/Wetlands Area since before 1972.
The court finds that Mr. Coco consented to the placement of the pipe under Two Rod Highway from the Amato open space and to the rear of his property. It was directed, encouraged and requested by him, after the dredging project of the 1860 Reservoir was completed.
In short, the plaintiffs state many times that there has been a destruction and injury to their land but the court has not been able to identify that destruction or injury. The plaintiffs have also alleged unreasonable increase in volume or force but have failed to prove by direct evidence any measurement of volume or any measurement of speed to prove this claim. The plaintiffs have claimed that the wetlands have been disturbed by the volume of the water flowing into the property and by silt and debris carried with the water, but it has offered insufficient proof that the wetlands are disturbed, polluted or in any way affected by the amount of water which exists on the property. The plaintiffs' pictures of runoff during a storm with obvious silt in the water are no proof that the situation now is any different than it has been CT Page 12652-L over the many years that water has been running through these channels and into this property. While the plaintiffs allege loss of the beneficial use of their property, the court is of the opinion that there is no substantial evidence that the use of their property is any different from what it was prior to the extended development mentioned above, mainly because of the nature and the location of the property and the natural watercourses and runoff.
As to the plaintiffs' claim of nuisance, it is the opinion of the court that the plaintiffs have failed to show any evidence of danger or injury and have failed to show any inherently dangerous condition. Nor have the plaintiffs shown that the use of the land is unreasonable or unlawful considering that the land is in a regulated inland/wetlands area and is served by two watercourses, as well as being in a flood zone for many years. The plaintiffs have been unable to show that they have been injured in relation to a right which they enjoy by reason of their ownership in the land. Circumstances which exist on that property existed when the plaintiffs purchased the property. In order to establish nuisance, it must be shown that: 1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; 2) the danger created was a continuing one; 3) the use of the land was unreasonable or CT Page 12652-M unlawful; and 4) the existence of the nuisance was the approximate cause of the plaintiffs' injuries or damages.Tomasso Bros., Inc. v. October 24, Inc., 221 Conn. 194, 197;State v. Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177,183; Quinnett v. Newman, 213 Conn. 343, 348; and Filisko v.Bridgeport Hydraulic, 176 Conn. 33. The plaintiffs have failed to substantiate their claim of nuisance.
The plaintiffs claim that the channeling and discharge of service and storm waters onto the property of the plaintiffs constitutes a trespass. Trespass is an unlawful entry upon the land of another. The entry must be without license or privilege. While the court is satisfied that the plaintiffs can prove title both jointly and individually and that they were in possession of the land, the court is of the opinion, however, that the claim of trespass must fail because no injury to the land has been shown. The plaintiffs had given consent to the flowage of water onto the portion of the land from the Amato open space through the culvert and the water at both places as it enters the plaintiffs' land enters through a natural watercourse established before the plaintiffs took possession of the land.
The plaintiffs allege that the defendant is in violation of C.G.S. § 22a-36 et seq. the Inland/Wetlands and Watercourses CT Page 12652-N Act and in violation of the Wethersfield Inland/Wetlands Regulations for conducting regulated activities within Inland/Wetlands areas without a permit. Section 22a-44 (b) provides that the Superior Court in an action brought by the Commissioner, Municipality, District or any person shall have jurisdiction to restrain a continuing violation of said sections, to issue orders directing that the violations be corrected or removed and to assess penalties pursuant to this section. The definition of "person" in section 22a-38 would include individuals such as the plaintiffs. Although section22a-44 (b) provides that monies collected pursuant to that section shall be used by the Commissioner of Environmental Protection to restore the effected Wetlands or Watercourses to their condition prior to the violation, wherever possible, this in the opinion of the court, pertains to civil penalties assessed pursuant to the section. However, all costs, fees and expenses in connection with such action are to be assessed as damages against the violators, together with reasonable attorney's fees which "may be allowed, all of which shall be awarded to the Commissioner, Municipality, District or Person
which brought such action." (Underlining added). Nothing herein would indicate that the plaintiffs are not proper parties to employ the machinery of the Inland/Wetlands Act. However, Section 22a-44 (b) refers to violations of Section22a-36 to 22a-45 inclusive, including regulations adopted by CT Page 12652-O the Commissioner and ordinances and regulations promulgated by municipalities. A violation of these sections would encompass the municipality conducting regulated activities without a permit. Section 22a-38 (13) defines regulated activities among other things as any operation within or use of wetland or watercourses involving deposition of material or any obstruction, construction, alteration, pollution of such wetlands or watercourses and in the opinion of this court, insufficient evidence has been produced by the plaintiffs to indicate that the defendant has violated any regulated activities.
No proof was offered by the plaintiffs that a permit is required. In the normal course of development of the land owners of subdivisions apply for and obtain inland/wetlands permits prior to their construction. The inland/wetlands permit is obtained by the applicant and only after construction and completion of the improvements are the existing storm water system and proposed new streets accepted by the town. These inland/wetlands permits are granted to the developers with the full knowledge of the course of drainage. Despite the many developments within the area in recent years, the plaintiffs, having a right of appeal, have never appealed the granting of such a permit. CT Page 12652-P
In the third count the plaintiffs allege that the defendant is in violation of the Environmental Protection Act of 1971 for allowing and/or causing pollution, impairment or destruction of the wetland areas in contravention of the public trust. They further state that the acts of the defendant are of a continuing nature and have caused and will cause irrefutable harm and injury to the plaintiffs and that the plaintiffs have suffered and will suffer loss and damage. The plaintiffs have not met their burden that any pollution of the inland/wetlands area on the Coco property has occurred nor have they shown any impairment or destruction of the wetland area. The plaintiffs allege loss and seek damages, thus the plaintiffs seek to protect their own private interest and do not seek to protect the public trust. Under the circumstances the court is of the opinion not only that the plaintiffs have failed to substantiate their allegations but that the plaintiffs are not a proper party under the circumstances of this case. Connecticut Water Co. v. Beasoleil, 204 Conn. 38. Although intervention is allowed, it is strictly limited to the raising of environmental issues. See also Mystic MarineLife Aquarium, Inc. v. Gill, 175 Conn. 43, 44.
The plaintiffs allege loss of the use of their property as alleged in their complaint amounts to a taking of said CT Page 12652-Q property without compensation in violation of the Fifth Amendment to the Constitution of the United States, and Article First, Section 11 of the Constitution of the State of Connecticut. They also allege in their sixth count a deprivation of their property without due process of law in violation of the Fourteenth and the Fifth Amendment to the Constitution of the United States. The court's opinion with reference to counts five and six is the same as that with reference to the first four counts.
In summary the plaintiffs' complaint, although based upon principles of law and alleged violations of statutes and the constitution, depends upon the evidence introduced in the case and because of the long-standing use of this property for drainage, evidence to substantiate the plaintiffs' allegations must be sufficient to show a substantial change in the condition and the use of plaintiffs' property today. This in the opinion of the court the plaintiffs have been unable to accomplish. Even photographs of water running through the drainage areas which the defendant showed was during one violent rainstorm did not in the opinion of the court overtax the facilities. No evidence was introduced as to the volume of the water and the conditions prior to the present day and an examination of the property and the surrounding area, including the Amato and Marshall's Meadow openspace leads to CT Page 12652-R the conclusion in the absence of any studies to the contrary that the defendant has properly provided for the slowing down and accommodation of any additional runoff due to the development in the surrounding area. An examination of the premises leads the court to the conclusion that there has been no diminution in the value of the land and the plaintiffs are making the best use of same and that they are building a house on the only portion of the land that would be suitable for building in any event, i.e. a filled portion behind lot 108. The rest of the land is low, heavily wooded, in a flood plain, designated as inland/wetlands and in its present state unsuitable for building. Although there was some evidence of diminution in its use for recreational purposes the court is of the opinion that such use was minimal to begin with and has not changed appreciably. From the time these lands were designated as inland/wetlands and during all of the development of the surrounding area, various inland/wetlands zoning and planning hearings have taken place, and only until recently have the plaintiffs lodged any protest. In the opinion of the court, the reason is that there has been no substantial change in the condition of the land except that large areas surrounding same have been developed and this land cannot be developed because of its natural conditions.
Accordingly, judgment may enter for the defendant. CT Page 12652-S
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.]