******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

CARRI ROUX, COADMINISTRATOR (ESTATE OF
LUKE M. ROUX), ET AL. *v.* JACOB N.
COFFEY ET AL.
(AC 46898)

Alvord, Elgo and Cradle, Js.

*Syllabus*

The plaintiffs appealed from the judgment of the trial court granting the defendant's motion to strike all counts of the complaint against it. They claimed, inter alia, that the court improperly granted the motion to strike as to the counts alleging negligence and public nuisance on the ground that the controlling authority of *Demond* v. *Project Service*, *LLC* (331 Conn. 816) precluded their claims. *Held*:

The trial court properly granted the defendant's motion to strike the plaintiffs' negligence claim, as the Supreme Court's reliance in *Demond* on public policy against imposing liability on a defendant for the harm caused off-premises by a drunk driver was equally applicable to the negligence claim in the present case.

The trial court properly granted the defendant's motion to strike the plaintiffs' public nuisance claim, as the Supreme Court's explanation in *Demond*, namely, that established legal principles deem the sole proximate cause of a crash to be an intoxicated driver's choice to consume alcohol immoderately and then drive on public roads, precluded the plaintiffs' public nuisance claim.

Argued November 13, 2024—officially released January 14, 2025

*Procedural History*

Action to recover damages for, inter alia, injuries sustained by the plaintiffs' decedent as a result of the alleged negligence of the defendants, and for other relief, brought to the Superior Court in the judicial district of Hartford, where the court, *Connors*, *J.*, granted the motion to strike filed by the defendant Live Nation Worldwide, Inc., and rendered judgment thereon, from which the plaintiffs appealed to this court. *Affirmed.*

*Ryan K. Sullivan*, with whom was *Julianne Lombardo Klaassen*, for the appellants (plaintiffs).

*Wesley W. Horton*, with whom were *Michael A. Lanza* and *John C. Pitblado*, and, on the brief, *Brendan N. Gooley*, for the appellee (defendant Live Nation Worldwide, Inc.).

*Opinion*

PER CURIAM. The plaintiffs, Carri Roux and Stephen J. Roux, coadministrators of the estate of their son, Luke M. Roux (Roux), appeal from the judgment of the trial court rendered in favor of the defendant Live Nation Worldwide, Inc.,[1] following the court's granting of the defendant's motion to strike all counts of the complaint brought against it. On appeal, the plaintiffs claim that the court improperly struck counts four and five of their complaint, which alleged negligence and public nuisance claims, respectively.[2] We affirm the judgment of the court.

The following facts, as alleged in the operative amended complaint filed March 10, 2023, and procedural history are relevant to the plaintiffs' claims on appeal. The plaintiffs commenced the present action in December, 2022. In count four of the complaint, the plaintiffs alleged that the defendant[3] "owned, leased, rented, controlled, possessed, operated, managed, and/ or maintained the premises at 61 Savitt Way, Hartford,"

---

[1] Jacob N. Coffey and Robin Coffey also were named as defendants in the underlying matter. The claims against them remain pending in the trial court. Contemporary Services Corporation also was named as a defendant, but subsequently, the plaintiffs withdrew the action as against it. The defendant Live Nation Worldwide, Inc., filed an apportionment complaint against Nicholas Duey.

Because Live Nation Worldwide, Inc., is the only defendant participating in this appeal, we refer to it as the defendant.

[2] The court also granted the defendant's motion to strike the plaintiffs' claim alleging a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. On appeal, the plaintiffs do not challenge the trial court's ruling striking the CUTPA count.

[3] All relevant allegations against the defendant included "its officers, agents, apparent agents, and/or employees."

which is known as the Xfinity Theatre. On June 25, 2022, the defendant organized, promoted, and held the Dierks Bentley "Beers On Me" concert (concert) at the Xfinity Theatre and "permitted patrons to loiter and consume alcoholic beverages (hereinafter referred to as 'tailgating') in the parking lots located on the aforementioned premises before the start of the [concert]." The plaintiffs alleged that the defendant "knew, or should have known, that . . . there would be thousands of patrons present on the aforementioned premises, many of whom would consume alcohol excessively to the point of intoxication and would foreseeably operate motor vehicles while in an intoxicated state, [and that] . . . based on past events, there would be a substantial number of arrests, criminal acts, and motor vehicle accidents, directly and proximately caused by the consumption of alcohol by patrons who participated in tailgating on the defendant's premises."

The plaintiffs further alleged: "At the same time and place, one Jacob Coffey was a ticket holder for the . . . concert and was present on the defendant's premises for the purposes of attending the concert and tailgating in the parking lot prior to the show," Coffey "consumed an excessive amount of alcohol to the point of intoxication while on the defendant's premises," and the defendant "knew, or should have known, that . . . Coffey was intoxicated and, as a result thereof, presented an unreasonable risk of harm to others." The plaintiffs alleged that the defendant denied Coffey "entry into the concert due to this level of intoxication," and that, "upon being informed that he was denied entry into the concert, [Coffey] became combative with the defendant." According to the plaintiffs' allegations, Coffey then "left the entrance area and walked to a portable toilet in the parking lot and, due to his intoxication, passed out inside the portable toilet for an extended period of time." The plaintiffs alleged that Coffey was

"extricated from the portable toilet by two friends, who alerted the defendant . . . of the concerns that they had for . . . Coffey and his level of intoxication" and that the defendant "responded to the friends' request for assistance" but "took no action to address the concerns regarding" Coffey. The plaintiffs alleged that "Coffey became combative and argumentative with his friends and, at some point thereafter, went back to his vehicle and drove off the premises."

The plaintiffs alleged that, "[s]hortly thereafter, at approximately 8:24 p.m. . . . Coffey was operating a motor vehicle in a westerly direction on Colt Highway, at or near its intersection with Birdseye Road, both of which are public roads or highways in Farmington," and Roux "was operating a motor vehicle in a southerly direction on Birdseye Road, at or near its intersection with Colt Highway." "Coffey, as a result of his intoxication, disregarded the red traffic signal that governed his lane of travel and proceeded into the intersection of Colt Highway and Birdseye Road and collided with the motor vehicle operated by . . . Roux, causing [Roux] to sustain and suffer . . . catastrophic fatal injuries and losses . . . . [F]ollowing the collision, at approximately 9:40 p.m. . . . Coffey had his blood drawn, which indicated a blood alcohol content of 0.191."[4]

The plaintiffs alleged that the fatal injuries and losses sustained were caused by the negligence and carelessness of the defendant in one or more of the following ways: "[T]hey voluntarily undertook to deny . . . Coffey entry to the venue due to his level of intoxication but, in so doing, failed to properly address the danger that he presented, thereby increasing the risk of harm

---

[4] In count two of the operative complaint, alleging recklessness against Coffey, the plaintiffs alleged that Coffey "was operating a motor vehicle at a high rate of speed—specifically, more than eighty [miles per hour] in an area with a posted speed limit of forty-five [miles per hour] . . . ."

to others; and/or . . . they voluntarily undertook to investigate and/or respond to concerns presented by other patrons regarding . . . Coffey but, in so doing, failed to take additional action to prevent or address the danger . . . Coffey presented, thereby increasing the risk of harm to others; and/or . . . they knew, or should have known, the risks attendant to tailgating, including the heightened risk that patrons would consume alcohol excessively on the premises and subsequently operate motor vehicles and failed to take adequate measures to prevent such conduct; and/or . . . they knew, or should have known, that there would be a large number of patrons on the premises who would consume alcohol excessively but failed to implement adequate security or safety measures to control and prevent such persons from presenting an unreasonable risk of harm to others, including [Roux]; and/or . . . they encouraged, promoted, and/or permitted the consumption of alcohol on the premises but failed to implement adequate security and/or safety measures to prevent excessive alcohol consumption and drunk driving; and/or . . . they knew, or should have known, that . . . Coffey was intoxicated and presented a foreseeable risk to others, including by way of operating a motor vehicle under the influence, but failed to prevent him from doing so; and/or . . . they failed to have adequate policies, procedures, or guidelines to address and prevent the excessive consumption of alcohol by patrons tailgating in the parking lot and/or to prevent such patrons from operating a motor vehicle while under the influence of alcohol; and/or . . . they failed to ensure that there were adequate security personnel in the parking lot during the permitted tailgating hours to prevent the excessive consumption of alcohol and drunk driving; and/or . . . they failed to train their officers, agents, apparent agents, and/or employees in proper procedures for identifying and responding to

reports of intoxicated individuals, such as the one involving . . . Coffey, on the premises and/or preventing such persons from leaving the premises through the operation of a motor vehicle; and/or . . . they failed to notify municipal police officers, including officers on the premises, that . . . Coffey was highly intoxicated and intending to operate a motor vehicle on a public thoroughfare, at substantial risk to other motorists, including" Roux. The plaintiffs alleged that, as a result of the negligence and carelessness of the defendant, Roux suffered catastrophic personal injuries resulting in his untimely death.

In count five, the plaintiffs incorporated certain allegations of count four and further alleged that the defendant "knew, or should have known, that tailgating without adequate security and/or safety measures in place to prevent or control thousands of patrons from consuming alcohol excessively and/or driving while under the influence, had a natural tendency to create danger and inflict injury to other persons," the "risks attendant to tailgating at the Xfinity Theatre were continuous and ongoing," and "the use of the premises at the Xfinity Theatre, including the parking lots located thereon, by the defendant . . . was unreasonable under the circumstances." The plaintiffs alleged that "[t]he public nuisance created by the unreasonable use of the land interfered with a right common to the general public to use public roads and highways; specifically, given the risks presented by intoxicated drivers who had consumed alcohol excessively while on the defendant's premises." The plaintiffs alleged that the public nuisance "was a direct and proximate cause of the catastrophic fatal injuries and losses sustained" by Roux. All counts alleged against the defendant were brought pursuant to the wrongful death statute, General Statutes § 52-555.

In response to the complaint, on April 10, 2023, the defendant filed a motion to strike the three counts[5] brought against it and an accompanying memorandum of law in support of its motion to strike. In support of its motion to strike, the defendant argued that counts four and five of the complaint were legally insufficient. With respect to count four, the defendant argued that "a premises owner has no duty to prevent an intoxicated person from leaving the premises and causing an accident off the premises." With respect to count five, the defendant also argued that there was no cognizable duty supporting a public nuisance claim and that "the type of nuisance alleged [could not] as a matter of law, be considered the 'proximate cause' of a drunk driving accident off the premises." The defendant argued that the claims asserted in counts four and five were precluded by our Supreme Court's decision in *Demond* v. *Project Service, LLC*, 331 Conn. 816, 208 A.3d 626 (2019).

On April 21, 2023, the plaintiffs filed a memorandum of law in opposition to the motion to strike. The plaintiffs argued, inter alia, that the defendant, in "voluntarily undert[aking] to respond to concerns regarding" Coffey's intoxication, incurred a legal duty not to increase the risk of harm Coffey presented to others and that the defendant breached this duty in the actions it took in relation to Coffey by "denying him entry to the premises and instructing him to wait in the parking lot." With respect to the defendant's argument that its conduct could not be considered the proximate cause of the accident, the plaintiffs responded that, because "a defendant can be liable for conduct that increases or contributes to the risk of intoxicated driving," the court should conclude that the plaintiffs' public nuisance claim was legally sufficient as pleaded. The plaintiffs further argued that our Supreme Court in *Demond*

---

[5] See footnote 2 of this opinion.

"overlooked controlling precedent in rejecting the plaintiffs' public nuisance claim."

On May 5, 2023, the defendant filed a reply. On June 12, 2023, the plaintiffs, with permission of the court, filed a surreply brief, in which they analyzed authority from jurisdictions outside of Connecticut in support of their position that count four of their complaint alleged a valid legal duty. On June 29, 2023, the defendant, also with permission of the court, filed a surreply brief, in which it reiterated its argument that our Supreme Court's decision in *Demond* is controlling and, accordingly, asserted that it would be inappropriate to look to out of state authority.

On July 11, 2023, the parties appeared before the court, *Connors, J.*, for oral argument. On August 29, 2023, the court issued a memorandum of decision, in which it granted the motion to strike. As to counts four and five, the court determined that *Demond* was controlling. Addressing count four, the court determined that *Demond* "preclude[d] any duty by the defendant toward a third party on public roads harmed by an adult who consumes alcohol on the defendant's premises." With respect to count five, the court quoted the Supreme Court's explanation in *Demond* that "established legal principles in Connecticut . . . deem the sole proximate cause of the crash to be [the intoxicated driver's] choice to consume alcohol immoderately and then drive on [public roads]." (Internal quotation marks omitted.) Accordingly, the court granted the motion to strike. This appeal followed.[6]

---

[6] The plaintiffs originally appealed on September 8, 2023, following the court's granting of the defendant's motion to strike. The defendant filed a motion to dismiss the appeal for lack of a final judgment. In response, the plaintiffs filed a motion for judgment pursuant to Practice Book § 10-44, requesting the court to render judgment on the stricken counts, which the court granted. Thereafter, the plaintiffs amended their appeal to reflect the trial court's judgment.

We begin with our standard of review. "Our review of a trial court's decision to grant a motion to strike is plenary. . . . This is because a motion to strike challenges the legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citation omitted; internal quotation marks omitted.) *Cenatiempo* v. *Bank of America, N.A.*, 333 Conn. 769, 788, 219 A.3d 767 (2019).

The following legal principles are applicable. "[A] cause of action in negligence is comprised of four elements: duty; breach of that duty; causation; and actual injury. . . . Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier of fact consider whether that duty was breached. . . . If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant. . . . Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Foreseeability is a critical factor in the analysis, because no duty exists unless an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result . . . . Our law makes clear that foreseeability alone, however, does not automatically give rise to a duty of care . . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself . . . but is only an expression of the sum

total of those considerations of policy [that] lead the law to say that the plaintiff is entitled to protection. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Citation omitted; internal quotation marks omitted.) *Raspberry Junction Holding, LLC* v. *Southeastern Connecticut Water Authority*, 340 Conn. 200, 210–11, 263 A.3d 796 (2021).

"The substantive law governing public nuisance claims is also well established. Section 821B of the Restatement (Second) of Torts defines a public nuisance as an unreasonable interference with a right common to the general public. . . . Whether an interference is unreasonable in the public nuisance context depends, according to the Restatement (Second), on (a) [w]hether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience, or (b) whether the conduct is proscribed by [law] . . . . The rights common to the general public can include, but certainly are not limited to, such things as the right to use a public park, highway, river or lake. . . .

"To prevail [on] a claim for public nuisance . . . a plaintiff must prove the following elements: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages. . . . In addition, the plaintiff must prove that the condition or conduct complained of interferes with a right common to the general public. . . . Nuisances are public where they . . . produce a common injury . . . . The test is not the number of persons annoyed, but the possibility of annoyance to the public by the invasion of its rights. A

public nuisance is one that injures the citizens generally who may be so circumstanced as to come within its influence." (Citations omitted; internal quotation marks omitted.) *Demond* v. *Project Service, LLC,* supra, 331 Conn. 860–61.

Because the plaintiffs claim on appeal that the court improperly struck counts four and five of their complaint on the basis that *Demond* was controlling authority precluding their claims, we begin with a discussion of that case. In *Demond,* a temporarily homeless man, Willis Goodale, was living in his Jeep in the parking lot of a service plaza on Interstate 395 for approximately one week prior to March 9, 2012. Id., 822. On March 9, 2012, Goodale consumed a large amount of alcohol and drove his vehicle on the interstate, where he caused a multivehicle crash, killing Benjamin Demond and injuring others. Id., 823–24. The plaintiffs commenced an action against the parties responsible for operating and maintaining the service plaza. Id., 824. They alleged "that the defendants created a public nuisance by permitting Goodale to loiter and to consume alcohol on the service plaza premises, and also breached a duty owed to passing motorists . . . to protect them from the increased risk of harm created by the defendants' failure to perform their contractual obligations"; id., 820–21; including obligations pursuant to a concession agreement under which the defendant, Project Service, LLC, and its subcontractors agreed not to permit the consumption of alcohol or loitering at the service plaza. Id., 822. The trial court rendered summary judgment on the plaintiffs' public nuisance claims but submitted the negligence claims to the jury, which returned a verdict in favor of the plaintiffs. Id., 821. The defendants appealed, claiming that the court improperly denied their motions to set aside the verdict and to direct judgment in their favor on the negligence claims, and

the plaintiffs cross appealed the rendering of summary judgment on their public nuisance claims. Id., 822.

In considering whether the defendants owed the plaintiffs a duty of care, our Supreme Court explained that "an owner or possessor of property in this state generally cannot be held liable in negligence for harms caused by adults who consume alcohol on that property but cause injury only after leaving to drive on the public roads. This limitation holds true even when the owner or possessor plays an *active* role in creating the risk by actually serving the defendant the alcohol." (Emphasis in original; footnote omitted.) Id., 837. Accordingly, the court determined that "Project Service [LLC] had no common-law duty, arising from its status as possessor of the premises, to prevent the risk of harm to the plaintiffs . . . ." Id., 838. The court additionally considered whether a duty of care arose from the contractual undertakings of the defendants and concluded that it did not. Id., 848.

Turning to policy considerations, the court explained: "The common-law rules that govern the premises liability of a property owner or possessor in this context embody the public policy determinations of the courts and the legislature regarding the appropriate allocation of rights and obligations among the various parties. . . . There may or may not come a time in the future when those common-law rules change in response to policy developments relating to the serious social problem of drunken driving. This case presents no occasion to consider the issue. In the absence of an express contractual provision or evidence of an unambiguous intention on the part of the contracting parties, we can perceive no reason why the policy considerations underlying our existing common-law rules of premises liability should automatically or presumptively be abrogated when a party's contract with a property owner includes an obligation to prevent alcohol consumption

on the premises, without more. We therefore conclude that the duty proposed by the plaintiffs will not arise unless the parties to such a contract agree to expand the undertaking party's obligations beyond what is imposed by the existing law." (Citations omitted.) Id., 849–50. Accordingly, the court concluded that the trial court improperly denied the defendants' motions to set aside the verdict and to render judgment in their favor on the plaintiffs' negligence claims. Id., 858–59.

With respect to the plaintiffs' public nuisance claims, the court in *Demond* found indistinguishable the facts of its prior decision in *Quinnett* v. *Newman*, 213 Conn. 343, 345, 568 A.2d 786 (1990), overruled on other grounds by *Craig* v. *Driscoll*, 262 Conn. 312, 813 A.2d 1003 (2003), and relied on the proposition in *Quinnett* that, "[t]o the extent that the defendants' conduct contributed to the creation of the dangerous condition (i.e., the intoxication of the motorist), their liability was cut off by the intoxicated motorist's own choice to consume alcohol immoderately and then drive." *Demond* v. *Project Service, LLC*, supra, 331 Conn. 862.

The court concluded that, even assuming that "the defendants' conduct in allowing Goodale to live and consume alcohol at the service plaza contributed to the 'dangerous condition' (i.e., Goodale's presence at the service plaza in an intoxicated state), established legal principles in Connecticut, which the plaintiffs have not asked us to overrule, deem the sole proximate cause of the crash to be Goodale's choice to consume alcohol immoderately and then drive" on the interstate. Id., 862–63. Accordingly, the court determined that the trial court properly granted the defendants' motions for summary judgment on the plaintiffs' public nuisance claims. Id., 863.

On appeal, the plaintiffs maintain that they are not asking this court to overrule *Demond*, rather, they argue

that *Demond* is distinguishable. Specifically, they "acknowledge that [the defendant] did not have a common-law duty, arising solely from its status as a landowner, to . . . Roux and other Connecticut motorists." However, they contend that "the facts of the present case, as pleaded, demonstrate that [the defendant], by and through its actions in, inter alia, permitting the excessive consumption of alcohol on its premises, refusing entry to . . . Coffey, and constructively ejecting him into the parking lot of the Xfinity Theatre, did owe a duty to the foreseeable victims of Coffey's intoxicated driving, and specifically . . . Roux." In other words, the plaintiffs contend that a duty arose based on the defendant's "direct contact with the intoxicated invitee and its action that caused him to drive drunk."[7]

We agree with the court that *Demond* is controlling of the plaintiffs' negligence and public nuisance claims. With respect to the negligence claim, we are not persuaded that the plaintiffs' allegations that the defendant's contact with the intoxicated individual, including the refusal of entry into the concert and constructive ejectment into the parking lot, are sufficient to distinguish the present case from *Demond*. *Demond*'s reliance on the public policy against imposing liability on

---

[7] In the present case, the plaintiffs argue on appeal in support of the viability of their public nuisance claim that "the 'established legal principles' referenced in *Demond* are based on a causation analysis in *Quinnett* v. *Newman*, [supra, 213 Conn. 343] . . . that the Supreme Court overruled in *Craig* v. *Driscoll*, [supra, 262 Conn. 312]." The defendant responds that the "causation analysis that *Quinnett* relied on for analysis of its nuisance claim was reiterated by the *Demond* court" and, because *Demond* is binding precedent, the plaintiffs' argument is unavailing. Moreover, the defendant notes, and our Supreme Court has recognized, that, "shortly after [the] decision in *Craig*, the legislature effectively overruled [the] holding in that case by expressly abrogating the common-law negligence action that [our Supreme Court] court had recognized." *O'Dell* v. *Kozee*, 307 Conn. 231, 265, 53 A.3d 178 (2012). Accordingly, we conclude that the plaintiffs' argument is unavailing.

a defendant for the harm caused off-premises by a drunk driver is equally applicable to the present case. Similarly, the Supreme Court's explanation that "established legal principles in Connecticut . . . deem the sole proximate cause of the crash to be [the intoxicated driver's] choice to consume alcohol immoderately and then drive on [public roads]," precludes the plaintiffs' public nuisance claim.[8] As the plaintiffs recognize, "we are bound by Supreme Court precedent and are unable to modify it. . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *Stamford Property Holdings, LLC* v. *Jashari*, 218 Conn. App. 179, 198 n.12, 291 A.3d 117, cert. denied, 347 Conn. 901, 296 A.3d 840 (2023). We conclude, therefore, that the court properly granted the defendant's motion to strike the plaintiffs' negligence and public nuisance claims.

The judgment is affirmed.

--------

[8] As our Supreme Court explained in *Demond* v. *Project Service, LLC*, supra, 331 Conn. 838 n.16, both duty and causation "are driven in significant part by considerations of policy, separate and apart from the foreseeability of harm, and it is fair to say that the causation doctrine developed in these cases is based primarily on policy considerations. For this reason, it is difficult to perceive any meaningful distinction between a doctrine holding that landowners have no duty to prevent harm to roadway travelers caused by drunk drivers and one holding that landowners have such a duty but their liability is categorically barred by the intervening act of the drunk driver."