## VALERIE P. CRAIG ET AL. *v.* STEVEN DRISCOLL ET AL.
### (AC 19299)

Landau, Pellegrino and Dupont, Js.

---

[12] Perry was the third attorney assigned to the defendant.

Argued November 1, 2000—officially released August 7, 2001

*Christopher G. Wall,* for the appellants (named plaintiff et al.).

*Patrick J. Walsh,* with whom, on the brief, was *Richard P. Hastings,* for the appellees (defendant David L. Davis et al.).

*Opinion*

LANDAU, J. The plaintiffs, Valerie P. Craig and Samuel Craig,[1] appeal from the judgment of the trial court rendered subsequent to its granting of the motion to strike filed by the defendants David L. Davis and Hawk's Nest, Inc.,[2] pursuant to Practice Book § 10-44. On appeal, the plaintiffs claim that the court improperly granted the defendants' motion to strike by concluding that the allegations of the plaintiffs' amended complaint failed to state a cause of action for bystander emotional distress against the defendant purveyors of alcohol for (1) negligent infliction of emotional distress and (2) reckless infliction of emotional distress.[3] We reverse the judgment of the trial court.

---

[1] The original plaintiffs were Valerie P. Craig, John S. Craig and Samuel Craig, respectively the parents and brother of the deceased victim, Sarah Craig. John S. Craig withdrew the action in the trial court. In this opinion, we refer to Valerie P. Craig and Samuel Craig as the plaintiffs unless otherwise noted.

[2] The plaintiffs commenced the action against Steven Driscoll, David L. Davis, Hawk's Nest, Inc., and Allstate Insurance Company. Davis and Hawk's Nest, Inc., filed the motion to strike that is at issue in this appeal. In this opinion, we refer to Davis and Hawk's Nest, Inc., as the defendants.

[3] We have consolidated the plaintiffs' claims from the statement of the issues in their brief, specifically, "1. [w]hether the facts [pleaded] by the plaintiffs support a claim for bystander emotional distress against the defendant purveyors of alcohol under the doctrine of *Clohessy* v. *Bachelor,* 237 Conn. 31 [675 A.2d 852] (1996) [en banc] . . . 2. [w]hether the plaintiffs' allegations of negligent service of alcohol can form the basis for a bystander emotional distress claim . . . 3. [w]hether the plaintiffs' allegations of negligence against the defendant purveyors of alcohol, other than those premised upon negligent service of alcohol, can form the basis for a bystander emotional distress claim . . . 4. [w]hether the plaintiffs' allegations of negligent service of alcohol to a known alcoholic, who lacked the capacity to fully understand the risks associated with intoxication, can support a claim of negligently inflicted bystander emotional distress against the defendants as an extension of the doctrines of *Ely* v. *Murphy,* 207 Conn. 88 [540 A.2d 54] (1988), and *Bohan* v. *Last,* 236 Conn. 670 [674 A.2d 839] (1996); [and] 5. [w]hether the plaintiffs' allegations of recklessness against the defendant

The following facts and procedural history are necessary for our resolution of the plaintiffs' appeal. Because the issues concern the granting of a motion to strike, we are limited to and must accept as true the facts alleged in the plaintiffs' amended complaint dated May 28, 1998. See *Waters* v. *Autuori*, 236 Conn. 820, 822, 676 A.2d 357 (1996). Those facts are that between 8:30 p.m. and midnight on May 21, 1996, the defendant Steven Driscoll was a patron of The Pub and Restaurant (The Pub), a business located in Norfolk, which is owned by the defendant Hawk's Nest, Inc. The defendant David L. Davis was the president of Hawk's Nest, Inc., and the permittee of The Pub. The defendants, through their agents, servants and employees, invited the public to enter The Pub and sold alcoholic beverages to its patrons. At the time in question, Driscoll was intoxicated when the defendants sold him alcoholic beverages, although they knew, or should have known, that Driscoll was an alcoholic who would operate a motor vehicle after leaving The Pub.

At 12:10 a.m. on May 22, 1996, Sarah Craig was a pedestrian on the west shoulder of Route 272 near its intersection with Route 44 in Norfolk. At that time, Driscoll, who had left The Pub, was operating a motor vehicle south on Route 44 when he caused the vehicle to veer off the roadway and strike Craig. Very shortly thereafter, Valerie P. Craig, the mother of Sarah Craig, and Samuel Craig, the brother of Sarah Craig, arrived at the scene of the accident and viewed Sarah Craig before a substantial change in her condition or location had taken place. Sarah Craig died on May 24, 1996, of the injuries she sustained in the accident. As a result of having witnessed Sarah Craig's severe and substantial injuries, the plaintiffs sustained severe emotional injuries.

purveyors of alcohol form the basis for a bystander emotional distress claim . . . ."

The amended complaint was alleged in sixteen counts. We are concerned only with counts three through six, which contain allegations against the defendants who are involved in this appeal. The court originally granted the defendants' motion to strike counts three through twelve. The plaintiffs thereafter filed a motion to reargue the motion to strike. The court denied the motion. The plaintiffs then moved for judgment on counts three through twelve for the purpose of appealing the propriety of the court's having stricken those counts. The court rendered judgment in accordance with the motion. The plaintiffs subsequently appealed from the judgment only with respect to counts three through six.[4]

"Whenever any party wishes to contest (1) the legal sufficiency of the allegations of any complaint . . . or of any one or more counts thereof, to state a claim upon which relief can be granted . . . that party may do so by filing a motion to strike the contested pleading or part thereof." Practice Book § 10-39 (a).

Our standard of review for granting a motion to strike is well settled. "In an appeal from a judgment following the granting of a motion to strike, we must take as true the facts alleged in the plaintiff's complaint and must construe the complaint in the manner most favorable to sustaining its legal sufficiency. *Sassone* v. *Lepore*, 226 Conn. 773, 780, 629 A.2d 357 (1993); *Michaud* v. *Wawruck*, 209 Conn. 407, 408, 551 A.2d 738 (1988)." *Waters* v. *Autuori*, supra, 236 Conn. 822. A motion to strike admits all facts well pleaded. See Practice Book § 10-39. "The allegations of the pleading involved are

---

[4] At the time the plaintiffs brought this appeal, their claims against Driscoll, who is not a party to the appeal, were still pending. The judgment rendered in favor of Davis and Hawk's Nest, Inc., however, is a final judgment for purposes of appeal pursuant to Practice Book § 61-3 because it disposed of all causes of action against the defendants. See *Turner* v. *Croman*, 52 Conn. App. 445, 446, 726 A.2d 1168 (1999).

entitled to the same favorable construction a trier would be required to give in admitting evidence under them and if the facts provable under its allegations would support a . . . cause of action, the motion to strike must fail. *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 108–109, 491 A.2d 368 (1985). What is necessarily implied need not be expressly alleged." (Internal quotation marks omitted.) *Clohessy* v. *Bachelor*, 237 Conn. 31, 33 n.4, 675 A.2d 852 (1996). "A determination regarding the legal sufficiency of a claim is, therefore, a conclusion of law, not a finding of fact. Accordingly, our review is plenary. *Napoletano* v. *CIGNA Healthcare of Connecticut, Inc.*, 238 Conn. 216, 232, 680 A.2d 127 (1996), cert. denied, 520 U.S. 1103, 117 S. Ct. 1106, 137 L. Ed. 2d 308 (1997)." *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 68, 700 A.2d 655 (1997). With that standard in mind, we turn to the plaintiffs' claims.

I

The plaintiffs' first claim is that the court improperly granted the defendants' motion to strike by concluding that the allegations of counts three and five failed to state causes of action, specifically, negligent infliction of bystander emotional distress as enunciated in *Clohessy* v. *Bachelor*, supra, 237 Conn. 31. We agree with the plaintiffs.

The allegations in question are those contained in paragraph twelve of counts three and five in which Valerie P. Craig and Samuel Craig, respectively, pleaded: "The collision, the injuries to Sarah Craig, and the severe emotional injury sustained by [the plaintiffs], were caused by the carelessness and negligence of [the defendants] . . . in one or more of the following ways: (a) in that they served numerous drinks to Steven Driscoll, which caused his intoxication, when the Defendants knew, or should have known, that Steven Driscoll would operate a motor vehicle upon leaving the [defen-

dants'] premises, when in the exercise of due care they should not have done so . . . (b) in that they maintained an alcohol service policy within the bar in which intoxicated patrons would not be refused service, when in the exercise of due care they should not have done so . . . (c) in that they maintained an alcohol service policy with regard to Steven Driscoll in particular in which Steven Driscoll would not be refused service of alcohol even when intoxicated, when in the exercise of due care they should not have done so . . . (d) in that they failed to supervise and monitor the distribution of alcohol within the pub, when in the exercise of due care they should have done so . . . (e) in that they failed to warn patrons of the dangers of drinking and driving, when in the exercise of due care they should have done so . . . (f) in that they allowed Steven Driscoll to operate a motor vehicle upon leaving the pub when [they] knew or should have known that Steven Driscoll was in an intoxicated state, when in the exercise of due care they should not have done so . . . (g) in that they failed to implement a designated driver or other similar program for patrons of the pub, when in the exercise of due care they should have done so . . . (h) in that they failed to have a Breathalyzer or intoxication measuring device within the pub, when in the exercise of due care they should have done so . . . (i) in that they negligently supplied alcohol to Steven Driscoll when [they] knew or should have known that Steven Driscoll was an alcoholic and/or tended to drink alcohol excessively, when in the exercise of due care they should not have done so [and] (j) in that they negligently supplied alcohol to Steven Driscoll when [they] knew or should have known that Steven Driscoll lacked the capacity to fully understand the risks associated with intoxication due to his alcoholism and/or his propensity to drink alcohol excessively, when in the exercise of due care they should not have done so."

In *Clohessy*, our Supreme Court concluded that when certain conditions are satisfied, "both the parent and the sibling of the tort victim may recover damages for the negligent infliction of emotional distress." Id., 32. The tort is sometimes referred to as bystander emotional distress.[5] In *Clohessy*, the plaintiffs, the mother and brother of a seven year old boy, witnessed the boy's death as the family crossed a street in a marked crosswalk on Hillhouse Avenue at its intersection with Trumbull Street in New Haven. The defendant had operated his motor vehicle at an excessive speed on Trumbull Street and caused the exterior side view mirror to strike the boy and throw him to the ground. The mother and brother suffered serious emotional injuries as a result of witnessing the boy's fatal head wounds. Id., 33–34.

In recognizing a claim for bystander emotional distress, the *Clohessy* court reexamined the history of the cause of action in this jurisdiction and the legal theories under which other jurisdictions have adopted it. Our Supreme Court rejected the zone of danger limitation on bystander emotional distress[6] in favor of the reasonable foreseeability theory because bystander emotional distress is reasonably foreseeable.[7] Id., 46–49. The court identified four criteria that must be alleged to state a claim for bystander emotional distress: The bystander

---

[5] The appellate courts of this state have addressed claims for negligent infliction of emotional distress in the context of various factual scenarios. See, e.g., *Montinieri* v. *Southern New England Telephone Co.*, 175 Conn. 337, 398 A.2d 1180 (1978) (release of address for unlisted telephone number); *Urban* v. *Hartford Gas Co.*, 139 Conn. 301, 93 A.2d 292 (1952) (removal of hot water heater from home on false charge that it was not paid for); *Ancona* v. *Manafort Bros., Inc.*, 56 Conn. App. 701, 746 A.2d 184 (prosecuting claim for breach of contract), cert. denied, 252 Conn. 953, 749 A.2d 1202 (2000); *Pavliscak* v. *Bridgeport Hospital*, 48 Conn. App. 580, 711 A.2d 747 (termination of employment), cert. denied, 245 Conn. 911, 718 A.2d 17 (1998).

[6] See, e.g., 2 Restatement (Second), Torts §§ 313, 436 (1965).

[7] See, e.g., *Thing* v. *La Chusa*, 48 Cal. 3d 644, 771 P.2d 814, 257 Cal. Rptr. 865 (1989) (en banc).

must be closely related to the injured victim; id., 52; the bystander's emotional injury must be caused by a contemporaneous sensory perception of the event or the conduct that causes the injury, or by witnessing the victim immediately after the injury to the victim if no material change has occurred with respect to the victim's location and condition; id.; the injury to the victim must be substantial, resulting in either death or serious physical injury; id., 53; and the bystander must sustain a serious emotional injury, which is a reaction beyond that to be anticipated in a disinterested witness and which is not an abnormal response to the injury producing event. Id., 54.

Here, the defendants concede that the allegations of the plaintiffs' amended complaint meet the four *Clohessy* criteria, and we agree. The defendants argue, however, that they owed no duty to the plaintiffs because their injuries were not reasonably foreseeable. We disagree with the defendants' position because, as alleged, the plaintiffs' injuries were reasonably foreseeable.

### A

Our first inquiry is whether the defendants owed a duty to the plaintiffs. "Since the chief element in determining whether [a] defendant owes a duty or an obligation to [a] plaintiff is foreseeability of the risk, that factor will be of prime concern in every case. Because it is inherently intertwined with foreseeability such duty or obligation must necessarily be adjudicated only upon a case-by-case basis." Id., 35–36, citing *Dillon* v. *Legg*, 68 Cal. 2d 728, 740, 441 P.2d 912, 69 Cal. Rptr. 72 (1968). *Clohessy* articulated the concept of duty that applies to our analysis. "Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty,

and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised . . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary [person] in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result? . . . Thus, initially, if it is not foreseeable to a reasonable person in the defendant's position that harm of the type alleged would result from the defendant's actions to a particular plaintiff, the question of the existence of a duty to use due care is foreclosed, and no cause of action can be maintained by the plaintiff.

"A simple conclusion that the harm to the plaintiff was foreseeable, however, cannot by itself mandate a determination that a legal duty exists. Many harms are quite literally 'foreseeable,' yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that 'duty' is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection. . . . While it may seem that there should be a remedy for every wrong, this is an ideal limited perforce by the realities of this world. Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree. . . . The final step in the duty

inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results." (Internal quotation marks omitted.) *Clohessy* v. *Bachelor*, supra, 237 Conn. 45–46.

In her dissent in *Quinnett* v. *Newman*, 213 Conn. 343, 349–54, 568 A.2d 786 (1990) (*Peters, C. J.*, dissenting), then Chief Justice Ellen Peters eloquently expressed the policy concerns that warrant the creation of a cause of action against the purveyors of alcoholic beverages who negligently contribute to the horrors of drinking and operating a motor vehicle: "I believe that the time has come for this court to recognize a common law cause of action, sounding in negligence, for the sale of intoxicating beverages to someone who, because of his intoxication, thereafter injures an innocent bystander on our public highways. Studies too numerous to replicate have demonstrated, time and time again, the strong connection between excessive consumption of alcohol and violent traffic accidents. See, e.g., *Shore* v. *Stonington*, 187 Conn. 147, 162, 444 A.2d 1379 (1982) [*Peters, J.*, dissenting]; *Slicer* v. *Quigley*, 180 Conn. 252, 264–67, 429 A.2d 855 (1980) (*Bogdanski, J.*, dissenting). The hapless victim in this case was simply another statistic in a long line of similar victims, killed by a driver who, after the consumption of a great deal of liquor at a bar, crossed the median line on the highway and drove his car into oncoming traffic. Enough is enough. This court should no longer be the roadblock that prevents a jury from considering whether, as a matter of fact, a commercial vendor of alcohol has taken suitable precautions, has observed reasonable care, to avoid injury to those who are foreseeably at risk and whose injuries are in fact proximately caused by the sale of alcohol." *Quinnett* v. *Newman*, supra, 350 (*Peters, C. J.*, dissenting).

The late Justice T. Clark Hull concurred with then Chief Justice Peters and wrote separately, adding that "[j]udges, like it or not, are part of society. As such, we cannot be blind to changing social mores. A rational wave of revulsion has arisen against the frightful tragedies caused by drunken drivers. I take judicial notice of the efforts of MADD, SADD and RID, as well as certain determined Connecticut legislators, to curb such atrocities." Id., 354 (*Hull, J.,* dissenting).[8]

With respect to alcohol related tragedies that occurred in the final decade of the twentieth century, we cannot accept the defendants' contention that a reasonable person could not foresee the tragic consequences of serving liquor to an intoxicated person who thereafter will operate a motor vehicle on the roadways of this state. We think that it is foreseeable to a purveyor of alcoholic beverages who serves liquor to an intoxicated person who will operate a motor vehicle that the victim's relatives will witness an accident or its immediate aftermath. We therefore recognize, on the facts alleged in this case, that purveyors of alcoholic beverages owe a duty to bystanders who suffer emotional distress on the basis of the foreseeability of the risk. Whether that duty extends to those victims when the harm is caused by adults who were served alcohol rather than by minors is the next question we must address.

B

In objecting to the plaintiffs' complaint, the defendants have asserted a timeworn argument that the com-

---

[8] "In 1989, the state department of transportation released 'Connecticut Traffic Accident Facts' indicating that, in 22 percent of fatal accidents on Connecticut highways, the driver was influenced by alcohol or drugs. The National Safety Council's Accident Facts, 1989 Edition, reports that each year, nationwide at least 24,000 people are killed and about 534,000 people are injured by alcohol-related motor vehicle accidents." *Quinnett* v. *Newman,* supra, 213 Conn. 350 n.1 (*Peters, C. J.,* dissenting).

mon law does not recognize a cause of action for the negligent sale of intoxicating beverages to an adult. The defendants argue that the sale of liquor was not the proximate cause of the plaintiffs' injuries because Driscoll voluntarily consumed the alcohol, and his operation of a motor vehicle was an intervening event that broke the chain of causation.[9] We disagree.

"To prevail on a negligence claim, a plaintiff must establish that the defendant's conduct legally caused the injuries. . . . As [our Supreme Court] observed . . . [l]egal cause is a hybrid construct, the result of balancing philosophic, pragmatic and moral approaches to causation. The first component of legal cause is causation in fact. Causation in fact is the purest legal application of . . . legal cause. The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . .

"The second component of legal cause is proximate cause, which [our Supreme Court has] defined as [a]n actual cause that is a substantial factor in the resulting harm . . . . The proximate cause requirement tempers the expansive view of causation [in fact] . . . by the pragmatic . . . shaping [of] rules which are feasible to administer, and yield a workable degree of certainty. . . . Remote or trivial [actual] causes are generally rejected because the determination of the responsibility for another's injury is much too important to be distracted by explorations for obscure consequences or inconsequential causes. . . . In determining proximate cause, the point beyond which the law declines to trace a series of events that exist along a chain signifying actual causation is a matter of fair judgment and a rough sense of justice. . . .

"[Our Supreme Court] has often stated that the test of proximate cause is whether the defendant's conduct

---

[9] See *Nolan* v. *Morelli*, 154 Conn. 432, 436–37, 226 A.2d 383 (1967).

is a substantial factor in producing the plaintiff's injury. . . . That negligent conduct is a cause in fact, however, obviously does not mean that it is also a substantial factor for the purposes of a proximate cause inquiry. The substantial factor test, in truth, reflects the inquiry fundamental to all proximate cause questions; that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence. . . . In applying this test, we look from the injury to the negligent act complained of for the necessary causal connection. . . .

"The scope of the risk analysis of proximate cause similarly applies where, as here, the risk of harm created by the defendant's negligence allegedly extends to an intervening criminal act by a third party. . . . [Our Supreme Court has] consistently adhered to the standard of 2 Restatement (Second), Torts § 442B (1965) that a negligent defendant, whose conduct creates or increases the risk of a particular harm and is a substantial factor in causing that harm, is not relieved from liability by the intervention of another person, except where the harm is intentionally caused by the third person and is not within the scope of the risk created by the defendant's conduct. . . . The reason [for the general rule precluding liability where the intervening act is intentional or criminal] is that in such a case the third person has deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted to him. . . . Such tortious or criminal acts may in themselves be foreseeable, [however,] and so within the scope of the created risk . . . ." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Manheimer*, 212 Conn. 748, 757–59, 563 A.2d 699 (1989), overruled in part on other grounds, *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 608, 662 A.2d 753 (1995).

We reject the defendants' argument that providing alcoholic beverages to an already intoxicated person or a person known to them to be an alcoholic cannot be the proximate cause of subsequent injuries caused by the drunken person. The argument is illogical in view of the Dram Shop Act, General Statutes § 30-102,[10] and those instances in which our Supreme Court has created exceptions to the common-law rule that denies a tort cause of action against purveyors of intoxicating liquor. See *Bohan* v. *Last*, 236 Conn. 670, 681, 674 A.2d 839 (1996); *Ely* v. *Murphy*, 207 Conn. 88, 540 A.2d 54 (1988); *Kowal* v. *Hofher*, 181 Conn. 355, 436 A.2d 1 (1980). Case law epitomizes the judicial recognition of the substantial causal relationship between the negligent service of alcoholic beverages and the injuries that occur as the result of drunkenness.[11]

C

Until recently in Connecticut, no common-law action sounding in tort lay against a purveyor of intoxicating

[10] General Statutes § 30-102 provides: "If any person, by himself or his agent, sells any alcoholic liquor to an intoxicated person, and such purchaser, in consequence of such intoxication, thereafter injures the person or property of another, such seller shall pay just damages to the person injured, up to the amount of twenty thousand dollars, or to persons injured in consequence of such intoxication up to an aggregate amount of fifty thousand dollars, to be recovered in an action under this section, provided the aggrieved person or persons shall give written notice to such seller within sixty days of the occurrence of such injury to person or property of his or their intention to bring an action under this section. In computing such sixty-day period, the time between the death or incapacity of any aggrieved person and the appointment of an executor, administrator, conservator or guardian of his estate shall be excluded, except that the time so excluded shall not exceed one hundred twenty days. Such notice shall specify the time, the date and the person to whom such sale was made, the name and address of the person injured or whose property was damaged, and the time, date and place where the injury to person or property occurred. No action under the provisions of this section shall be brought but within one year from the date of the act or omission complained of."

[11] The legislature also recognized the relationship between the service of alcohol and injuries that are the result of drunkenness by enacting the Dram Shop Act, General Statutes § 30-102. See footnote 10.

liquor to a person who voluntarily became intoxicated and, as a consequence of his or her intoxication, caused injury to the person or property of another. In certain instances, our Supreme Court has created exceptions to the common law. See *Bohan* v. *Last*, supra, 236 Conn. 670; *Ely* v. *Murphy*, supra, 207 Conn. 88; *Kowal* v. *Hofher*, supra, 181 Conn. 355. By the allegations of their complaint, the plaintiffs seek to state a cause of action for bystanders who are closely related to those harmed by drunken drivers against the purveyors of alcohol who serve adults whom they know to be alcoholics. A purveyor of alcohol to a minor may be liable for negligently serving a minor. The initial question is whether a known alcoholic should have the same status as a minor.[12]

In *Ely*,[13] our Supreme Court concluded that "[i]n view of the legislative determination that minors are incompetent to assimilate responsibly the effects of alcohol and lack the legal capacity to do so, logic dictates that their consumption of alcohol does not, as a matter of law, constitute the intervening act necessary to break the chain of proximate causation and does not, as a matter of law, insulate one who provides alcohol to minors from liability for ensuing injury." *Ely* v. *Murphy*, supra, 207 Conn. 95.

In *Bohan*, our Supreme Court permitted the defendant purveyors of alcohol to seek apportionment of the tortfeasor liability to innocent third party victims of intoxicated minors. *Bohan* v. *Last*, supra, 236 Conn.

---

[12] Throughout this opinion, the terms alcoholic, habitual drunkard and one who tends to drink excessively are used interchangeably. We intend no distinction between the terms.

[13] The tragic facts of *Ely* concerned the negligent service of alcohol to minors at a high school graduation party. The defendant was the host father who collected $3 from each of the 400 teenagers who attended the party. An eighteen year old guest became drunk, and as he left the party in his mother's station wagon, he struck and killed another minor guest. *Ely* v. *Murphy*, supra, 207 Conn. 89–90.

681. In that case, the defendant tavern impleaded adult patrons who supplied liquor to a minor in the bar in the case brought by the plaintiff against the tavern. The intoxicated minor operated his motor vehicle, causing a one car collision that resulted in the death of the plaintiff's decedent, who was a passenger in the vehicle. "In appropriate circumstances, a purveyor of alcohol to a minor is liable not because he has custodial control over, or a special relationship with, the minor, but because he has negligently plied the minor with alcohol." Id., 679.

In recognizing a common-law tort action against individuals who negligently furnish alcoholic beverages to individuals they knew or should have known were minors, the court in *Ely* held that "[t]his is not to say, however, that the social host or other purveyor of alcohol is absolutely liable to the minor served or innocent third parties thereafter injured. Rather, the matter of proximate cause of the injury and ensuing damage becomes one of fact to be determined in each instance by the court or jury as the parties elect." *Ely* v. *Murphy*, supra, 207 Conn. 97. *Bohan* also did not "engraft strict liability on this common law duty." *Bohan* v. *Last*, supra, 236 Conn. 681.

The defendants argue that Connecticut does not recognize a common-law negligence action against a purveyor of alcoholic beverages to an intoxicated adult and point to our Supreme Court's holding in *Quinnett* v. *Newman*, supra, 213 Conn. 347, where the court concluded that in the case of a "tavern seller-adult patron situation," the victim's remedy does not include a cause of action in negligence or public nuisance because of the enactment of the Dram Shop Act.[14]

---

[14] *Kowal* v. *Hofher*, supra, 181 Conn. 358–59, however, establishes that § 30-102 is not an exclusive remedy. "There is absolutely no indication, however, that where causation is adequately traced back to the barkeeper who served an intoxicated person an alcoholic beverage the legislature, nevertheless, intended the dram shop act to be the injured plaintiff's exclu-

The plaintiffs seek to carve out another exception to the common law similar to the one that now exists for negligent service of alcohol to minors. The plaintiffs argue that alcoholics, common drunkards or individuals who are unable to control their consumption of alcoholic beverages are a separate and distinct class because, like minors, they are not able to deal responsibly with the effects of alcohol. The plaintiffs' claim is compelling in the face of their allegations that the defendants knew or should have known of Driscoll's inability to control his consumption of alcohol. The notion that alcoholics are a special class is not unique. At least one jurisdiction that does not have an applicable dram shop act has recognized a cause of action for the sale of liquor to an intoxicated alcoholic sounding in intentional or reckless misconduct. See *Grasser* v. *Fleming*, 74 Mich. App. 338, 253 N.W.2d 757 (1977).

We, however, need not go beyond the jurisdictional boundaries of Connecticut to find authority that, in a criminal setting, purveyors of intoxicating beverages defy the law by serving liquor to alcoholics or habitual drunkards. General Statutes § 30-86 provides in relevant part: "Any permittee or any servant or agent of a permittee who sells or delivers alcoholic liquor to any minor, or to any intoxicated person, or to *any habitual drunkard*, knowing the person to be such an habitual drunkard, shall be subject to the penalties of section 30-113. . . ."[15] (Emphasis added.) We think it is significant that our legislature identified a class of persons to whom purveyors of alcohol are prohibited from selling intox-

---

sive remedy. . . . If the plaintiff has no cause of action against the bartender for negligence, it is not the statute but rather the common law which denies the plaintiff a right of recovery." (Citations omitted.) Id. *Kowal* recognized an action for wanton and reckless misconduct.

[15] General Statutes § 30-113 provides: "Any person convicted of a violation of any provision of this chapter for which a specified penalty is not imposed, shall, for each offense, be fined not more than one thousand dollars or imprisoned not more than one year or both."

icating liquor that includes habitual drunkards, as well as minors and intoxicated persons. The victims who are injured as a result of the sale of alcoholic beverages to intoxicated persons may bring a statutory action against a purveyor of intoxicating liquor pursuant to the Dram Shop Act. Those who are injured as the result of providing alcohol to a minor have a cause of action under an exception to the common law pursuant to *Ely* and *Bohan*. Public policy, as evidenced in our criminal penalties, prohibits the sale of alcoholic beverages to known alcoholics. A bystander has a cause of action for the negligent infliction of emotional distress against a tortfeasor who proximately caused the injury. *Clohessy* v. *Bachelor*, supra, 237 Conn. 31. We, therefore, determine that it is logical to meld the holdings of those cases so that bystander victims who are closely related to the victims of drunken drivers and who are injured as the result of a purveyor's having provided liquor to known alcoholics should have a legal remedy.

Violation of a statute often forms the legal basis of an action sounding in negligence per se. See *Gore* v. *People's Savings Bank*, 235 Conn. 360, 368, 665 A.2d 1341 (1995). The two-pronged test of negligence per se is (1) whether the plaintiffs are within the class of persons protected by the statute and (2) whether the injury suffered is of the type that the statute is intended to prevent. Id., 368–69. "While in general the violation of a statute is negligence per se, there are limitations to this rule. In order to base a recovery upon negligence in violation of a statute, it must appear that the injury suffered was of a nature which the statute was intended to guard against. . . . It is extremely doubtful if these provisions in our Liquor Control Act were intended to guard an intoxicated person from personal injury. Rather, they were passed in pursuance of a broader public policy for the protection of the public at large."

(Citation omitted.) *Noonan* v. *Galick*, 19 Conn. Sup. 308, 310, 112 A.2d 892 (1955).

Our common law has a long history forbidding the sale of intoxicating liquor to those individuals who, as the result of illness, disability or predisposition, are unable to control their consumption of alcohol. Cases exist from the mid-nineteenth century concerning the prohibition against selling liquor to habitual drunkards. See, e.g., *Barnes* v. *State*, 20 Conn. 232, 237 (1850) ("legislature, for the purpose of protecting, in some measure, the community from the many crimes committed by common drunkards, while under the maddening influence of ardent spirits, may have made it the duty of the rum-seller to see to it, at his peril, that he does not sell to such persons").

We conclude, therefore, that the allegations of a complaint against purveyors of alcohol who serve liquor to alcoholics or habitual drunkards who are intoxicated when the purveyor knew or should have known that the alcoholic would operate a motor vehicle are sufficient to state a negligence cause of action and, therefore, to survive a motion to strike. Counts three and five of the plaintiffs' complaint, to the extent that they allege the foregoing, should not have been stricken.

II

The plaintiffs' second claim is that the court improperly granted the defendants' motion to strike counts four and six by concluding that they failed to state a cause of action, specifically, reckless infliction of emotional distress. We agree.

The allegations of paragraph twelve of counts four and six are as follows: "The collision, the injuries to Sarah Craig, and the severe emotional injury sustained by [the plaintiffs], were caused by the willful, wanton and/or reckless actions of the [defendants] in one or

more of the following ways: (a) in that the Defendant, David L. Davis, instituted a policy in which he required one or more of his employees or the employees of The Pub or Hawk's Nest, Inc. to continue to serve alcohol to patrons who were intoxicated and instructed them not to refuse service to such patrons, said policy resulting in the service of alcohol to Steven Driscoll on May 21, 1996 while he was in an intoxicated state . . . (b) in that the Defendant, David L. Davis, instituted a policy with regard to Steven Driscoll in particular in which he required one or more of his employees, or the employees of The Pub or Hawk's Nest, Inc. to continue to serve alcohol to Driscoll even if intoxicated and not to refuse service to Driscoll, said policy resulting in the service of alcohol to Steven Driscoll on May 21, 1996 while he was in an intoxicated state . . . (c) in that [the defendants] served alcoholic beverages to Steven Driscoll when [they] knew that Steven Driscoll was intoxicated and that he would be operating a motor vehicle subsequent to consuming said liquor . . . (d) in that [they] were in particular aware of the excessive drinking habits of Steven Driscoll and the fact that Steven Driscoll had driven while intoxicated in the past, yet they continued to serve alcohol to him on May 21, 1996 while in an intoxicated state [and] (e) in that [they] provided liquor to Steven Driscoll when he was visibly intoxicated, and knowing that by doing so, Steven Driscoll would be placing others, such as the [plaintiffs'] decedent, at risk."

The defendants argue that counts four and six are merely a repetition or rewording of the negligence allegations contained in the third and fifth counts of the plaintiffs' amended complaint, but realleged as wilful, wanton or reckless misconduct. We conclude, however, that the allegations of counts four and six are not as broad as the allegations of negligence in counts three and five. Counts three and five contain ten subpara-

graphs of alleged negligence. Counts four and six contain only five subparagraphs and focus on the policy instituted by Davis to serve alcohol to intoxicated patrons of The Pub, Driscoll in particular.

To determine whether the plaintiffs' amended complaint states a cause of action sounding in recklessness, we look first to the definitions of wilful, wanton and reckless behavior. "Recklessness is a state of consciousness with reference to the consequences of one's acts. *Commonwealth* v. *Pierce*, 138 Mass. 165, 175 [1884]. . . . It is more than negligence, more than gross negligence. *Bordonaro* v. *Senk*, 109 Conn. 428, 431, 147 A. 136 [1929]. The state of mind amounting to recklessness may be inferred from conduct. But, in order to infer it, there must be something more than a failure to exercise a reasonable degree of watchfulness to avoid danger to others or to take reasonable precautions to avoid injury to them. *Mooney* v. *Wabrek*, 129 Conn. 302, 308, 27 A.2d 631 (1942). Wanton misconduct is reckless misconduct. *Menzie* v. *Kalmonowitz*, 107 Conn. 197, 199, 139 A. 698 (1928). It is such conduct as indicates a reckless disregard of the just rights or safety of others or of the consequences of the action. *Bordonaro* v. *Senk*, [supra, 431]. *Markey* v. *Santangelo*, 195 Conn. 76, 78, 485 A.2d 1305 (1985); see also *Brown* v. *Branford*, 12 Conn. App. 106, 108, 529 A.2d 743 (1987). . . .

"While we have attempted to draw definitional distinctions between the terms wilful, wanton or reckless, in practice the three terms have been treated as meaning the same thing. The result is that 'willful,' 'wanton,' or 'reckless' conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent. . . . It is at least clear . . . that such aggravated negligence must be more than any mere mistake resulting from inexperience, excitement, or confusion, and more than mere thoughtlessness or

inadvertence, or simply inattention . . . . W. Prosser & W. Keeton, Torts (5th Ed.) § 34, p. 214." (Citations omitted; internal quotation marks omitted.) *Dubay* v. *Irish*, 207 Conn. 518, 532–33, 542 A.2d 711 (1988).

"The plaintiff may claim alternative relief, based upon an alternative construction of the cause of action." Practice Book § 10-25. See *Marrin* v. *Spearow*, 35 Conn. App. 398, 401, 646 A.2d 254 (1994) (party may plead alternative and even inconsistent theories in same action). "There is a wide difference between negligence and a reckless disregard of the rights or safety of others, and a complaint should employ language explicit enough to clearly inform the court and opposing counsel that reckless misconduct is relied on." *Brock* v. *Waldron*, 127 Conn. 79, 81, 14 A.2d 713 (1940). "One is guilty of reckless misconduct when 'knowing or having reason to know of facts which would lead a reasonable [person] to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' Restatement, 2 Torts, § 500." *Brock* v. *Waldron*, supra, 84. "Whether defendant's conduct constituted heedless and reckless disregard of the plaintiffs' rights was a question of fact for the jury whose verdict, based upon conflicting evidence, will not be disturbed unless reasoning minds could not reasonably have reached such conclusion." (Internal quotation marks omitted.) Id., 83.

Furthermore, our Supreme Court has recognized that although there is no common-law action sounding in negligence against purveyors of alcohol, the Dram Shop Act is not an injured plaintiff's exclusive remedy. *Kowal* v. *Hofher*, supra, 181 Conn. 358. The *Kowal* court held that the policy considerations that protect vendors of alcohol from the consequences of their negligent conduct in the sale of liquor do not apply when the conduct

constitutes wanton and reckless misconduct. Id.,
360–61.

The allegations of counts four and six of the plaintiffs'
amended complaint allege that Davis instituted a policy,
an intentional act. We conclude that the allegations
of counts four and six go beyond the allegations of
carelessness and negligence alleged in counts three and
five. Counts four and six, therefore, allege a separate
cause of action. Whether the evidence will support a
reckless cause of action is not to be decided here. See
*DeVita* v. *Esposito*, 13 Conn. App. 101, 105, 535 A.2d
364 (1987) (alternative pleading justified when pleader
does not know all facts necessary to make election),
cert. denied, 207 Conn. 807, 540 A.2d 375 (1988). The
question is whether the complaint states a cause of
action. We conclude that counts four and six state a
cause of action, that a jury should determine whether
the defendants proximately caused the plaintiffs' injur-
ies and, if so, whether their acts were reckless or merely
negligent. The court therefore improperly granted the
defendants' motion to strike counts four and six.[16]

[16] In paragraph twelve of counts three through six of their amended com-
plaint, the plaintiffs alleged, alternatively, that the defendants were negligent
or reckless in serving alcohol to Driscoll, an alcoholic, and in other ways.
Paragraph twelve contains numerous subparagraphs alleging that, in addi-
tion to serving alcohol to Driscoll, the defendants negligently or recklessly
maintained a certain policy with respect to the service of alcohol, failed to
warn patrons of the dangers of drinking and driving, failed to implement a
designated driver program and failed to have a Breathalyzer within The Pub.
Our holding today is limited to the allegations of negligent and reckless
service of alcohol to an alcoholic and does not reach the other allegations
of tortious conduct.

In their motion to strike, the defendants did not distinguish the various
allegations of tortious conduct in the subparagraphs of paragraph twelve.
On appeal, the defendants contend that all of the subparagraphs relate to the
service of alcohol. The plaintiffs argue that the defendants' policy regarding
alcohol service, and their failure to warn, to implement a designated driver
program or to have a Breathalyzer within The Pub are separate and distinct
allegations of negligence or recklessness. We agree with the plaintiffs.

We do not reach the issue of whether those additional allegations of
tortious conduct state a claim because they were not addressed adequately

The judgment is reversed and the case is remanded for further proceedings in accordance with law.

In this opinion the other judges concurred.

in the trial court or on appeal. The trial court did not distinguish among the allegations of the subparagraphs of paragraph twelve in its memorandum of decision. The plaintiffs argued in the trial court and on appeal, citing several trial court decisions, that those additional allegations raise questions of causation for the jury to determine. That argument puts the cart far in front of the horse; a duty must exist before the question of causation can be reached. The question of duty with regard to the additional allegations was not addressed in the trial court or on appeal. We, therefore, decline to address it.