[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
On March 16, 1999, the plaintiffs, Alexis Bentley, a minor, and Richard Bentley, parent and next best friend of the minor, filed a second amended complaint against the defendant, the city of New Haven.[1] The complaint alleges the following facts. On July 28, 1995, the minor plaintiff was playing at the Wooster Square Memorial Park in New Haven (park) when she came in contact with a World War II Memorial monument (monument) located along a sidewalk in the park. The monument broke from its base and fell on the minor, severely injuring her right foot (accident).
Count one alleges a violation of General Statutes § 13a-149
(municipal highway defect statute). Count two states a claim of public nuisance. Count three states a claim of negligence. Count four seeks damages that have been incurred or will be incurred by the parent plaintiff for medical expenses on behalf of the minor plaintiff.
On July 2, 1999, the defendant filed an amended answer and three special defenses to the plaintiffs' first amended complaint, dated June 12 and filed on June 16, 1998. The special defenses allege no facts, but argue that the plaintiffs' causes of action are barred by the doctrine of governmental immunity (first), that the minor plaintiff assumed the risk of her own actions (second), and that the alleged injuries or damages sustained by the minor plaintiff was caused by her own negligence (third). On July 9, 1999, the plaintiffs filed a reply, denying the legal conclusions asserted in the special defenses.
On December 7, 2000, the defendant filed the present motion for summary judgment on all counts of the complaint, supported by a memorandum of law, an affidavit of Pacific T. Giordano, the owner and operator of Giordano Brothers Monuments in West Haven, which sold the monument to the defendant and installed it on behalf of the defendant, an unauthenticated copy of an affidavit of Claude Tate, an employee of the parks, recreation and tree department of the defendant, who worked as a foreman for the CT Page 12323 park during the time when the accident happened, and an uncertified copy of the transcripts of the deposition of the minor plaintiff, which took place on May 23, 2000. On April 25, 2001, the plaintiffs filed a memorandum of law in opposition to the motion for summary judgment, supported by an affidavit of Nidia Lopez, mother of the minor plaintiff. On June 19, 2001, the defendant filed a supplemental memorandum of law in reply to the plaintiff's memorandum of law in opposition. On July 6, 2001, the plaintiffs filed a supplemental memorandum of law in reply to the defendant's supplemental memorandum of law.
On July 9, 2001, the parties appeared at the short calendar session before this court to argue the motion, at which time the plaintiffs withdrew count one of their complaint.[2]
Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp.,233 Conn. 732, 751, 660 A.2d 810 (1995). The court should grant summary judgment "if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "[A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party." (Internal quotation marks omitted.) Miller v. United Technologies Corp., supra, 752. "[A] directed verdict may be rendered only where, on the evidence viewed in the lightmost favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed." (Emphasis in original.) Id. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." (Internal quotation marks omitted.) Appleton v. Board of Education, 254 Conn. 205, 209, 757 A.2d 1059
(2000).
"In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v. Borkowski, 206 Conn. 495, 500,538 A.2d 1031 (1988). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to judgment as a matter of law." (Internal quotation marks omitted). Appleton v.Board of Education, supra, 254 Conn. 209. "[T]he party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Internal quotation marks omitted.) Id.
"A genuine issue has been variously described as a triable, substantial CT Page 12324 or real issue of fact . . . and has been defined as one which can be maintained by substantial evidence." (Citation omitted; internal quotation marks omitted.) United Oil Co. v. Urban DevelopmentCommission, 158 Conn. 364, 378, 260 A.2d 596 (1969). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Id., 379. "Issue of fact encompasses not only evidentiary facts in issue but also questions as to how the trier would characterize such evidentiary facts and what inferences and conclusions it would draw from them." (Internal quotation marks omitted.) Id.
Count two states a claim of public nuisance. The plaintiffs allege the following facts. The defendant controlled and maintained the park for public use pursuant to General Statutes § 7-148.[3] On the date of the accident and for a long time before that date, the monument existed in a defective, dangerous and unsafe condition, being loose, unsecured and broken from its cement base. The minor plaintiff exercised due care on the occasion of the accident. The plaintiffs argued that the defendant's creation and maintenance of a public nuisance caused the minor plaintiff's injuries and damages in the following ways: the defendant created or participated in the construction of the monument; kept, maintained or allowed the monument to remain in the defective, dangerous and unsafe condition; failed to warn the minor plaintiff of the condition; failed to inspect the park, including the monument; and failed to remedy the condition that it knew or should have known to be defective, dangerous and unsafe.
"A common-law nuisance claim consists of four core elements: (1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages." (Internal quotation marks omitted.)Elliott v. Waterbury, 245 Conn. 385, 420, 715 A.2d 27 (1998); Filisko v.Bridgeport Hydraulic Co., 176 Conn. 33, 35-36, 404 A.2d 889 (1978). A public nuisance claim, as opposed to a private nuisance claim, contains the additional element that "the condition or conduct complained of interferes with a right common to the general public." Keeney v. OldSaybrook, 237 Conn. 135, 163, 676 A.2d 795 (1996); State v.Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177, 183, 527 A.2d 688
(1987).
"If the creator of the condition intends the act that brings about the condition found to be a nuisance, the nuisance thereby created is said to be absolute and its creator is strictly liable. DeLahunta v. Waterbury,134 Conn. 630, 633-34, 59 A.2d 800 (1948). If the condition claimed to be CT Page 12325 a nuisance arises out of the creator's unintentional but negligent act, i.e., a failure to exercise due care, the resulting condition is characterized as a negligent nuisance. Kostyal v. Cass, 163 Conn. 92,98-99, 302 A.2d 121 (1972). "[T]he only practical distinction between an absolute nuisance and one grounded in negligence is that contributory negligence is not a defense to the former but may be as to the latter.'Kostyal v. Cass, supra, 99." Quinnett v. Newman, 213 Conn. 343, 348-49,568 A.2d 786 (1990). "Intentional," as used in "intentional nuisance," does not mean that "a wrong or the existence of a nuisance was intended"; it means only that "the creator of [it] intended to bring about the conditions which are in fact found to be a nuisance." Beckwithv. Stratford, 129 Conn. 506, 510-11, 29 A.2d 775 (1942); Green v.Ensign-Bickford Co., 25 Conn. App. 479, 490, 595 A.2d 1383, cert. denied, 220 Conn. 919, 597 A.2d 341 (1991).[4]
At common law, a nuisance claim against a municipality must also show that the condition alleged to be the nuisance was created by "some positive act of the municipality." See, e.g., Keeney v. Old Saybrook,
supra, 237 Conn. 164.[5] It has been held that a "failure to remedy a condition not of the municipality's own making is not the equivalent of the required positive act in imposing liability in nuisance upon a municipality." Id.[6] Relying on a Restatement rule, the Keeney court, however, has carved out a narrow exception to the "positive act" requirement with regard to a nuisance claim against a municipality in the context of environmental protection. Id., 160, 163-64, 166.[7] The court in Keeney v. Old Saybrook, supra, 237 Conn. 166, holds that, at least in the context of environmental protection, "in light of the strong public policy manifested by the environmental protection statutes [namely, the Environmental Protection Act, General Statutes § 22a-14
et seq., and the water pollution control statute, General Statutes §22a-427], we conclude that a municipality may be liable for a public nuisance that it intentionally creates through its prolonged anddeliberate failure to act to abate that nuisance." (Emphasis added.) It means that even if a nuisance-making condition is not originally of a municipality's own making, the municipality may nonetheless be liable if it knowingly or intentionally fails to abate the public nuisance, at least in the context of environmental protection.
It is not disputed in this case that the nuisance alleged is public in nature. The allegations support at least the theory of negligent nuisance, especially in view of the allegation that the minor plaintiff was in the exercise of due care when she came in contact with the monument and was injured. This allegation implies that she was free from contributory negligence, which is a defense to a negligent nuisance claim, but not to an absolute nuisance claim. See Quinnett v. Newman,
supra, 213 Conn. 349. The complaint alleges that the condition was of the CT Page 12326 municipality's own making, that is, it participated in the construction, installation and maintenance of the monument, and allowed, controlled and maintained the monument to be in the nuisance-making condition. The allegations reasonably imply that the condition of the monument alleged to be the nuisance was caused by the defendant's failure to exercise due care in making, installing, placing or maintaining the monument. Under this theory of negligent nuisance, it is immaterial whether the defendant intended to bring about the nuisance-making condition, although the condition must be proximately caused by "some positive act" of the municipality as well as its failure to exercise due care.
The parties, however, have treated the terms "intentional" and "positive" as being synonymous or interchangeable, but they are not in view of the case law quoted above. "Positive act," while left undefined, is contrasted with nonfeasance or mere failure to remedy a nuisance-making condition not of the municipality's own making. See, e.g., Sheeler v. Waterbury, 138 Conn. 111, 115-16, 82 A.2d 359 (1951);Bacon v. Rocky Hill, 126 Conn. 402, 407, 11 A.2d 399 (1940). "Intentional act," by comparison, is contrasted with "unintentional" or negligent act. Under an intentional theory of nuisance, the plaintiffs must show and prove that the defendant intended to bring about the condition alleged and subsequently found to be the nuisance, if not the actual existence of the nuisance. Beckwith v. Stratford, supra, 129 Conn. 510-11. The nuisance-making condition alleged here is that the 700 pound monument was left standing loose, unsecured or broken from its base, and placed near a playground for children and beside a public path across the park. While the allegations are clear that the defendant intended the creation, installation and placement of the monument, they are not clear whether the defendant also intended the monument to be existing in the state of being loose, unsecured or broken from its base. In view of the parties' reliance on the absence or presence of contributory negligence, which is not a defense to an absolute nuisance claim, the court infers that this count does not intend such a claim.
The defendant argues that the condition of the monument and the conduct of the defendant complained of fail as a matter of law to constitute a public nuisance because the allegations cannot satisfy as a matter of law some of the requisite elements of the public nuisance claim. In opposition, the plaintiffs argue that they have sufficiently alleged a claim of public nuisance. Relying on Chazen v. New Britain, 148 Conn. 349,355, 170 A.2d 891 (1961), and Kostyal v. Cass, 163 Conn. 92, 100,302 A.2d 101 (1972), they also argue that whether the requisite elements are present to constitute a nuisance is ordinarily a question of fact.
With regard to the requirement that the condition complained of have a natural tendency to create danger and inflict injury upon person or CT Page 12327 property, the defendant, relying on Ness v. New Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 377488 (October 5, 1999, Meadow, J.), argues that as a matter of law the monument in question cannot be found to be inherently dangerous.
In opposition, the plaintiffs argue that there exists a genuine issue of material fact as to whether the monument existing in the alleged condition had a natural tendency to create danger and inflict bodily injury. Relying on Balaas v. Hartford, 126 Conn. 510, 12 A.2d 765
(1940), and Prifty v. Waterbury, supra, 133 Conn. 654, they argue that whether a particular condition in a public park constitutes a nuisance is a question of fact not suitable for summary because such a determination necessarily involves a consideration of all relevant circumstances as well as the inherent nature of the condition.
The court agrees with the plaintiffs that there is a genuine issue of material fact under this element of the public nuisance claim because the court cannot decide as a matter of law that the condition did not have a natural tendency to create danger and inflict physical injury or was not inherently dangerous. "`A nuisance . . . describes an inherently dangerous condition that has a natural tendency to inflict injury upon persons or property.' Quinnett v. Newman, 213 Conn. 343, 348, 568 A.2d 786
(1990). "There must be some dangerous or noxious characteristic to the condition before it can be termed a nuisance.' D. Wright, J. Fitzgerald W. Ankerman, Connecticut Law of Torts (3d Ed.) § 128; see Butzgy v.Glastonbury, 203 Conn. 109, 121, 523 A.2d 1258 (1987)." Heritage VillageMaster Assn., Inc. v. Heritage Village Water Co., 30 Conn. App. 693,708-709, 622 A.2d 578 (1993). Generally, it is a question of fact whether a particular condition in a public park constitutes a nuisance. Priftyv. Waterbury, supra, 133 Conn. 658 ("[w]hether or not a particular condition in a public park constitutes a nuisance involves a consideration of all relevant circumstances as well as the inherent nature of the condition"); Heritage Village Master Assn., Inc. v.Heritage Village Water Co., supra, 709. Only when no reasonable minds can differ does it become a question of law. See Heritage Village MasterAssn., Inc. v. Heritage Village Water Co., supra, 709 (concluding that the running water supplied by the defendant water company, the condition complained of, was not inherently dangerous, that is, corrosive, as a matter of law because the water was potable, within generally accepted range of the pH chemistry and the danger would exist only as a result of unusual combination of circumstances contributing to the result).[8]
See also Hoffman v. Bristol, 113 Conn. 386, 389, 155 A. 499 (1931).
The court cannot rule as a matter of law that the condition complained of in this case did not have a natural tendency to create danger and inflict physical injury. The defendant's affiant, Giordano, states that CT Page 12328 the monument weighed about 700 pounds. The plaintiffs allege that the monument was loose, unsecured or broken from its base on the date of the accident and had existed in such a state for some time before that date. Tate, another affiant for the defendant, denies in his affidavit that the monument or its cement base was ever defective, dangerous, unsafe or in need of repair during his employment by the defendant as the foreman for the park. The mere denial of the plaintiffs' allegations cannot establish as a matter of law that the condition of the monument was not inherently dangerous. Instead, it creates a genuine issue of material fact as to the condition of the monument on the date of the accident and prior thereto. See Gambardella v. Kaoud, 38 Conn. App. 355, 360, 660 A.2d 877 (1995) (averments contained in an affidavit that are merely denials of the allegations in a complaint "are an insufficient basis for the rendition of summary judgment"). There is a genuine issue of material fact as to whether the condition of the 700 pound monument, alleged to be loose, unsecured and broken from its base, was inherently dangerous to the public.
With regard to the requirement that the use of the land, that is, the placement and installation of the monument where it was, be unreasonable, the defendant argues that as a matter of law the placement of the monument, located in an area isolated from the playground for children, cannot be deemed to be unreasonable or unlawful.
In opposition, the plaintiffs argue that there exists a genuine issue of material fact as to whether the placement of the monument was unreasonable. Specifically, the plaintiffs dispute the defendant's allegation that the monument was placed in an area of the park isolated from the playground; they submit photographs of the area showing that the monument was placed close to swings and a slide installed in the park to attract children. They argue that the question of reasonable use of the land is a question of fact, not fit for summary judgment.
The court agrees with the plaintiffs that there exists a genuine issue of material fact as to whether the use of land was reasonable because this issue involves a mixed question of fact and law, making summary judgment unsuitable. "[T]he issue of what constitutes reasonable use "is a question of fact to be determined on a case by case basis, considering all the relevant circumstances, including such factors as the amount of harm caused, its foreseeability, the purpose or motive with which the act was done, and the consideration of whether the utility of the use of the land outweighed the gravity of the harm resulting.' Peterson v. Oxford,189 Conn. 740, 745, 459 A.2d 100 (1983); Litchteig v. Churinetz,9 Conn. App. 406, 409-10, 519 A.2d 99 (1986)." Hagist v. Washburn,16 Conn. App. 83, 86, 546 A.2d 947 (1988) (involving easement). See alsoBarber v. Manchester, 72 Conn. 675, 681-82, 45 A. 1014 (1900) (the issue CT Page 12329 of reasonable use of the land, involving the placement and operation of the machinery very close to a public highway, alleged to have been the nuisance that caused the plaintiffs' injury, is a question of fact to be determined in view of all the evidentiary facts and circumstances).
In this case, the parties dispute whether the placement of the monument was reasonable, specifically, whether the monument was located in an area isolated from the playground for children. The photographs indicating the placement of the monument, submitted by both parties, were taken from different angles: the plaintiffs' photographs make the monument appear to be close to the swings and the slide, while those of the defendant do not show the swings and the slide at all and make the monument appear to be in an isolated area. Both the allegations and the evidence create a genuine issue of material fact as to whether the placement of the monument was reasonable where it was installed and placed.
With regard to the requirement that the existence of the condition alleged to be the nuisance be the proximate cause of the minor plaintiff's injuries and damages, the defendant argues that the minor plaintiff's own admission at her deposition shows as a matter of law that the condition was not the proximate cause. Specifically, the defendant argues that the minor plaintiff's deposition admission, that while she was "leaning on" the monument, "it started to shake, so [she] tried to steady it . . ." (admission), establishes as a matter of law that her own action was an "intervening event," "detrimental" to the satisfaction of this element.
In opposition, relying on Elliot v. Waterbury, supra, 245 Conn. 403, which holds that neither the text of General Statutes § 52-557n
(b)[9] nor its legislative history establishes a sole proximate causation standard regarding the liability of a municipality, the plaintiffs argue that even if the minor plaintiff is found to be contributorily negligent, it does not bar the nuisance claim as a matter of law. They argue further that contributory negligence is a question of fact for the jury to decide.
The court agrees with the plaintiffs that this count does not fail as a matter of law under this requirement because the issue of proximate causation is usually a question of fact, inappropriate for summary judgment. "`Proximate cause establishes a reasonable connection between an act or omission of a defendant and the harm suffered by a plaintiff.' W. Prosser W. Keeton, [Torts (5th Ed. 1984) § 41, p. 263]. The Connecticut Supreme Court has defined proximate cause as [am actual cause that is a substantial factor in the resulting harm. . . . The substantial factor test reflects the inquiry fundamental to all proximate cause questions, that is, whether the harm which occurred was of the same CT Page 12330 general nature as the foreseeable risk created by the defendant's negligence." (Internal quotation marks omitted.) Medcalf v. WashingtonHeights Condominium Assn., Inc., 57 Conn. App. 12, 16-17, ___ A.2d ___, cert. denied, 253 Conn. 923, 754 A.2d 798 (2000). "An `issue of proximate cause is ordinarily a question of fact for the trier.' (Internal quotation marks omitted.) Doe v. Manheimer, 212 Conn. 748, 756,563 A.2d 699 (1989), overruled in part on other grounds, Stewart v.Federated Dept. Stores, Inc., 234 Conn. 597, 608, 662 A.2d 753 (1995). `It becomes a conclusion of law only when the mind of a fair and reasonable [person] could reach only one conclusion; if there is room for a reasonable disagreement the question is one to be determined by the trier of fact.' (Internal quotation marks omitted.) Id., 757." Ludingtonv. Sayers, 64 Conn. App. 768, 773, ___ A.2d ___ (2001).
There is ample room for reasonable disagreement here regarding the issue of proximate causation, making summary judgment inappropriate.[10]
The defendant argues that it was the minor plaintiff's own negligence that caused her injuries and damages. The court cannot decide as a matter of law, on the basis of the minor plaintiff's admission, that it was her own negligence that caused her injuries and damages, as urged by the defendant, because the admission plainly does not support such a conclusion. The defendant's affiant, Giordano, states that the monument weighed about 700 pounds. Common sense makes it doubtful that the minors' act of leaning could be the "intervening event" that toppled the 700 pound monument if it had been properly secured and fixed to its base.[11]
It is also a question of fact whether she was contributorily negligent, which "involves a consideration of all relevant circumstances as well as the inherent nature of the condition." See Prifty v.Waterbury, supra, 133 Conn. 658. Summary judgment is particularly "ill-adapted to negligent cases, where . . . the ultimate issue in contention involves a mixed question of fact and law, and requires the trier of fact to determine whether the standard of care was met in a specific situation. . . . [T]he conclusion of negligence is necessarily one of fact. . . ." (Citations omitted; internal quotation marks omitted.) Michaud v. Gurney, 168 Conn. 431, 434, 362 A.2d 857 (1975). Even if assuming, arguendo, that the minor plaintiff was contributorily negligent, contributory negligence does not operate as a per se bar to recovery under General Statutes § 52-572h (b), which has eliminated the rule of complete bar to recovery if contributory negligence is found in favor of comparative negligence.[12]
With regard to the requirement that the nuisance-making condition be created by some positive act of the defendant, the defendant argues that the conduct complained of shows only a failure to act, that is, its alleged failure to remedy the condition, and cannot show as a matter of CT Page 12331 law that the condition was created by some positive act of its own. Relying on Wright v. Brown, 167 Conn. 464, 356 A.2d 176 (1975), Lukas v.New Haven, 184 Conn. 205, 439 A.2d 949 (1981), and Brown v. Branford,12 Conn. App. 106, 529 A.2d 743 (1987), the defendant argues that the failure to remedy a dangerous condition not of the municipality's own making is not the equivalent of the required positive act. The defendant argues further that, by the minor plaintiff's own admission at her deposition, it was the minor plaintiff, not the defendant, who performed a positive act.
In opposition, the plaintiffs argue that the count has sufficiently alleged a positive act by the defendant in having participated in the creation, construction and maintenance of the monument. They argue further that the affidavit of Giordano, the defendant's affiant, shows that the defendant positively created, controlled and maintained the nuisance-making condition: the affidavit shows that the defendant purchased the monument from Giordano's business and had the firm install the monument on its behalf. They argue that the count, viewed in the light most favorable to them, shows that the nuisance-making condition was created by positive acts of the defendant.
The court agrees with the plaintiffs that their allegations have sufficiently shown that the defendant performed positive acts in having created and maintained the alleged nuisance-making condition. The court cannot decide as a matter of law that the allegations are insufficient to satisfy the requirement of showing some positive act. It is not disputed that the defendant participated in the creation, construction, installation and placement of the monument. It is not disputed either that the defendant controlled and maintained the monument and the park; Tate, the defendant's affiant, acknowledged that as a foreman for the park employed by the defendant, he supervised a staff of three employees and together they were responsible for the maintenance of the park, including the inspection of the monument on a weekly basis. Even though Tate denied that the monument ever existed in the alleged nuisance-making condition, it is a question of fact whether the condition was of the defendant's own making in view of "all relevant circumstances as well as the inherent nature of the condition." See Prifty v. Waterbury, supra,133 Conn. 658. The case law relied on by the defendant, that a municipality is not liable for failing to remedy a dangerous condition not of its own making; see, e.g., Keeney v. Old Saybrook, supra,237 Conn. 164; is inapposite because there exists a genuine issue of material fact in this case as to whether the nuisance-making condition was of the defendant's own making.[13]
Because this count of public nuisance does not fail as a matter of law, as urged by the defendant, and presents genuine issues of material CT Page 12332 fact as to the essential elements of the cause of action, the court denies the plaintiff's motion for summary judgment on this count.
Count three states a claim of tortious negligence based on the same set of factual allegations asserted under count two. The plaintiffs allege additionally that the defendant's agents, servants or employees controlled, maintained, supervised, managed, possessed or operated the park, including the monument. The minor plaintiff was lawfully present in the park as a social invitee. The plaintiffs argue that the injuries and damages sustained by the minor plaintiff were caused by the negligence of the defendant's agents, servants or employees in that they kept and maintained the monument in a defective, dangerous and unsafe condition (malfeasance), allowed the monument to remain in the condition (nonfeasance), or failed to warn the minor plaintiff of the condition (failure to warn), failed to inspect the area of the park (failure to inspect), including where the monument was located, and failed to remedy the condition of the monument that it knew or should have known to be defective, dangerous and unsafe (failure to remedy).
The parties initially dispute whether the plaintiffs' failure to plead a statute that abrogates governmental immunity that a municipality enjoys at common law in this count is fatal to their cause of action. It is not disputed that the plaintiffs have not pleaded any statute in this count or amended it to include any statute. They assume, for the moment, that the defendant enjoys governmental immunity from tort liability for negligence in the absence of an abrogating statute. The defendant argues that under the holding of Williams v. New Haven, 243 Conn. 763, 769,707 A.2d 1251 (1998), unless the plaintiffs specifically rely on a statute that abrogates governmental immunity, it is immune from liability for negligence in the performance of a governmental function at common law. The defendant argues that because this count has failed to plead any statute that abrogates governmental immunity it fails as a matter of law.
In opposition, the plaintiffs argue that unlike the plaintiffs inWilliams, they have relied on General Statutes § 52-557n in their opposition to the motion for summary judgment on this count.[14]
Specifically, they argue that their failure to plead the statute in their complaint does not prevent them from relying on the statute in their oral argument before the court or memoranda of law in opposition to the motion for summary judgment. Relying on Steele v. Stonington, 225 Conn. 217, 221
n. 7, 622 A.2d 551 (1993), and Hanover Ins. Co. v. Fireman's Fund Ins.Co., 217 Conn. 340, 345, 586 A.2d 567 (1991), they argue that even though they are required under Practice Book § 10-3(a) to identify the statute on which their claim is based in the complaint, such a requirement is directory rather than mandatory.[15] In the absence of CT Page 12333 any showing that the defendant has been misled by the failure to plead the statute, the plaintiffs argue that this count is properly before the court. They argue further that the court should follow the recent decision in Colon v. New Haven, 60 Conn. App. 178, 188 n. 4, ___ A.2d ___, cert. denied, 255 Conn. 908,763 A.2d 1034 (2000), involving the same pleading defect, and rule in their favor.
"[I]t is the settled law of this state that a municipal corporation is not liable for negligence in the performance of a governmental function. . . . This court has previously stated that [a] municipality itself was generally immune from liability for its tortious acts at common law. . . ." (Citations omitted; internal quotation marks omitted.) Williams v. New Haven, supra, 243 Conn. 766. "We have also recognized, however, that governmental immunity may be abrogated by statute. . . . Thus, the general rule developed in our case law is that a municipality is immune from liability for negligence unless the legislature has enacted a statute abrogating that immunity." Id., 766-67.
The Williams court ruled against the plaintiffs there on grounds of governmental immunity because the plaintiffs failed to "rely" on any abrogating statute, failed to name an agent, officer or employee of the municipality, or failed to invoke indemnification pursuant to General Statutes § 7-465.[16] Id., 769. The Williams court indicates that the failure to rely on any abrogating statute is not merely a failure to plead the statute in the complaint. The court notes that "throughout the entire course of this litigation, including the allegations of the complaint, the trial and this appeal, the plaintiffs have relied solely on their claim of common-law negligence on the part of the defendant." Id., 766. "At no time have they advanced any statute as a basis for the liability of the defendant in this case. Accordingly, on appeal, we consider this case as it was litigated in the trial court and briefed and argued in this court." Id. The implication is clearly that if the plaintiffs there had relied on an abrogating statute in their argument before the court or in their memoranda of law, their failure to plead the statute in their complaint would not have been fatal to their cause of action.
The Appellate Court has turned this implication into an express ruling in Colon v. New Haven, supra, 60 Conn. App. 188 n. 4, where the court considers and dismisses the same argument by the same defendant about the same pleading defect, involving the plaintiffs' failure to plead §52-557n in their complaint. "In this case, unlike in Williams, the plaintiffs raised General Statutes § 52-557n, which sets forth general principles of municipal liability and immunity, in opposing the defendant's motion for summary judgment. While the defendant is correct CT Page 12334 in pointing out that the plaintiffs did not cite § 52-557n in their complaint or amend their complaint to include such statute, the plaintiffs' failure to do so does not necessarily preclude recovery. Although Practice Book § 10-3(a) provides that when any claim in a complaint is grounded on a statute, the statute shall be specifically identified by its number, this rule has been construed as directory rather than mandatory. Criscuolo v. Mauro Motors, Inc., 58 Conn. App. 537,545, 754 A.2d 810 (2000). As long as the defendant is sufficiently apprised of the nature of the action; Goodrich v. Diodato,48 Conn. App. 436, 443, 710 A.2d 818 (1998); the failure to comply with the directive of Practice Book § 10-3(a) will not bar recovery. SeeCriscuolo v. Mauro Motors, Inc., supra, 546-47." Colon v. New Haven,
supra, 188 n. 4.
Unlike the plaintiffs in Williams but like the plaintiffs in Colon, the plaintiffs here have specifically relied on § 52-557n in their oral argument and legal briefs in opposition to the motion for summary judgment, and for this reason the Williams holding is inapposite to this case. See Colon v. New Haven, supra, 60 Conn. App. 188 n. 4. The defendant here undeniably has notice of the plaintiffs' reliance on § 52-557n in this count. The defendant has not alleged or shown that it has been misled by the plaintiffs' failure to plead the statute in their complaint. Under these circumstances, the plaintiffs' failure to plead the statute is not fatal to their cause of action. See Hanover Ins.Co. v. Fireman's Fund Ins. Co., supra, 217 Conn. 345 (Practice Book § 10-3(a) is directory rather than mandatory if one party has notice of the statutory claim intended by the other party and is not misled by that party's failure to plead the statute); Williams v. New Haven,
supra, 243 Conn. 766; Colon v. New Haven, supra, 188 n. 4.
The parties dispute next, in their supplemental memoranda of law, whether the defendant is entitled to governmental immunity, specifically whether the acts complained of are discretionary or ministerial in nature and whether the imminent harm exception applies if the acts are found to be discretionary. The defendant argues that the court should grant its motion for summary judgment on this count as a matter of law on grounds of governmental immunity. The defendant argues that the maintenance and operation of a public park is a governmental or discretionary function and that as a municipality it is immune from liability from negligence in performing the governmental function. Specifically, the defendant argues that the acts complained of were all discretionary in nature, such as the failure to warn of the condition of the monument, the failure to inspect the monument, and the failure to remedy the condition.
In opposition, relying on such cases as Gauvin v. New Haven,187 Conn. 180, 186, 445 A.2d 1 (1982), and Tango v. New Haven,
CT Page 12335173 Conn. 203, 205-206, 377 A.2d 284 (1977), Lyles v. Stamford, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 340593 (November 22, 2000, Skolnick, J.) (29 Conn. L. Rptr. 61), the plaintiffs argue that whether the acts complained of in operating a city park were discretionary are questions of fact, depending on the nature of the acts.
Alternatively, relying on such cases as Burns v. Board of Education,228 Conn. 640, 646, 638 A.2d 1 (1994), Purzycki v. Fairfield,244 Conn. 101, 108-109, 708 A.2d 937 (1998), and Lecy v. New London,
Superior Court, judicial district of New London at New London, Docket No. 549544 (May 2, 2000, Corradino, J.), the plaintiffs argue that even if the acts complained of are found to be discretionary in nature, their claim qualifies for the imminent harm exception to governmental immunity because the minor plaintiff was within narrowly defined identified classes of foreseeable victims, and that the existence of imminent harm is a question of fact.[17] Specifically, they argue that their complaint, read in the light most favorable to them, raises a genuine issue of material fact as to whether the placement of the monument next to the swings and the slide subjected the minor plaintiff to an imminent harm.
"At common law, Connecticut municipalities enjoy governmental immunity, in certain circumstances, from liability for their tortious acts." Ryszkiewicz v. New Britain, 193 Conn. 589, 593, 479 A.2d 793
(1984); Heigl v. Board of Education, 218 Conn. 1, 4, 587 A.2d 423
(1991). "[U]nder the common law, barring the possible application of an exception, both municipalities and their employees or agents have immunity from negligence liability for governmental acts involving the exercise of judgment or discretion." Elliot v. Waterbury, supra,245 Conn. 411. "A municipality is immune from liability for the performance of governmental acts as distinguished from ministerial acts. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . [M]inisterial acts are performed in a prescribed manner without the exercise of judgment or discretion as to the propriety of the action." (Internal quotation marks omitted.) Gordon v. Bridgeport Housing Authority,208 Conn. 161, 167-68, 544 A.2d 1185 (1988).
"The state legislature, however, possesses the authority to abrogate any governmental immunity by statute that the common law gives to . . . municipalities." White v. Burns, 213 Conn. 307, 312, 567 A.2d 1195
(1990). The Supreme Court in Williams v. New Haven, supra, 243 Conn. 767, cites General Statutes § 52-557n as an instance of legislative enactment that has limited governmental immunity. "[Section] 52-557n
. . . contains two subsections. Subsection (a) sets forth general principles CT Page 12336 of municipal liability and immunity, while subsection (b) sets forth [ten] specific situations in which both municipalities and their officers are immune from tort liability." (Internal quotation marks omitted.)Elliot v. Waterbury, supra, 245 Conn. 395. The Supreme Court has noted that "the section codified at § 52-557n consists of a complex interweaving of provisions that codify the common law and provisions that incorporate new legal notions"; id., 408, citing Sanzone v. Board ofPolice Commissioners, 219 Conn. 179, 185, 592 A.2d 912 (1991).
Because the plaintiffs have specifically relied on § 52-557n in stating this cause of action, the court is not persuaded by the defendant's argument, based on outdated case law, that it enjoys governmental immunity by performing a purely public or official act, that is, the operation and maintenance of a public park. The two Supreme Court cases relied on by the defendant for support of its argument, Epstein v.New Haven, 104 Conn. 283, 284, 132 A. 467 (1926), and Wysocki v. Derby,140 Conn. 173, 175, 98 A.2d 659 (1953), held generally that a city in operating and managing a public park acts as a governmental agency exercising an authority delegated to it by the state and that liability for the negligent performance of a purely public governmental duty may occur only when a statute so provides. These two cases were decided under a historical, now outdated, view of governmental immunity, first adopted in Wadsworth v. Middletown, 94 Conn. 435, 439, 109 A. 246 (1920), which was only subject to a narrow bad faith exception. See Gordon v.Bridgeport Housing Authority, supra, 166 ("an exception to liability was carved out [in Wadsworth] for discretionary acts, as long as they were not performed maliciously, wantonly or in an abuse of discretion"); see also Leger v. Kelly, 142 Conn. 585, 589-90, 116 A.2d 429 (1955) (adopting the public duty doctrine, under which public officials are immune from liability by discharging public duties). The Supreme Court has subsequently qualified the public duty doctrine by limiting it to discretionary, but not ministerial, public or official acts. See Shorev. Stonington, 187 Conn. 147, 153, 444 A.2d 1379 (1982); Gordon v.Bridgeport Housing Authority, supra, 170 ("although the public duty doctrine provides the starting point of the analysis, distinctions between discretionary acts and ministerial acts are often controlling without regard to whether the duty is ascertained to be public or private"). The two cases relied on by the defendant were decided long before the enactment of § 52-557n in 1986.
"The landscape of municipal liability . . . has obviously changed with the adoption of General Statutes § 52-557n. . . ." Williams v. NewHaven, supra, 243 Conn. 770 (Berdon, J., concurring). While the common law treats a municipality differently from its employees, agents or officers in terms of immunity from tort liability; see, e.g., Burns v.Board of Education, supra, 228 Conn. 645 (a municipality is generally CT Page 12337 immune from tort liability, whereas municipal employees may be liable for their ministerial or nondiscretionary official acts); the statute does not treat them differently. The statute provides that "a political subdivision of the state shall be liable for damages to person or property caused by . . . [t]he negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties. . . ." General Statutes § 52-557n (a)(1)(A). While the common law presumes that a municipality is generally immune from tort liability; see, e.g., Williamsv. New Haven, supra, 766; the statute provides that a municipality is generally liable in tort unless one of the enumerated or recognized exceptions apply. General Statutes § 52-557n (a)(2) (municipality is not liable for criminal, fraudulent, malicious or willful conduct of its employees, officers or agents, and not liable for its discretionary governmental acts) and (b) (enumerating ten exceptions to municipal liability).[18]
The only applicable exception to municipal liability under the statute in this case is the one based on discretionary governmental acts, as codified in § 52-557n (a)(2)(B). "[T]he ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [where] resolution of those factual issues is properly left to the jury." (Internal quotation marks omitted.) Purzycki v. Fairfield, supra, 244 Conn. 107-108. "[T]he determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder. . . ." (Citations omitted; internal quotation marks omitted.) Lombard v. EdwardJ. Peters, Jr., P.C., 252 Conn. 623, 628, 749 A.2d 630 (2000). It becomes a question of law if the nature of the acts complained of is "apparent from the complaint"; id., citing Evans v. Andrews, 211 Conn. 505-507; that is, if the complaint leaves no room for reasonable disagreement as to the nature of the acts complained of.
The court agrees with the defendant that its alleged failure to remedy the condition of the monument was discretionary in nature. See Evon v.Andrews, supra, 211 Conn. 506 ("no matter how objective the standard, an inspector's decision as to whether a building falls below a standard and whether remedial orders are therefore required involved the exercise of his or her judgment"). For the same reason, the alleged failure to warn of the condition and the alleged nonfeasance (allowing the monument to remain in the alleged condition) also involved the exercise of judgment as to whether the condition of the monument fell below a safety standard. See id.
The court, however, cannot decide as a matter of law that the other CT Page 12338 acts complained of were discretionary in nature. Specifically, the alleged failure to inspect could be ministerial in nature because the staff of the appropriate department of the defendant could be required to conduct periodic inspection of the park in a prescribed manner, without the exercise of judgment or discretion as to the propriety of the action.[19] The defendant's affiant, Tate, stated that he and his staff inspected and maintained the park on a weekly basis. Likewise, the alleged malfeasance, that the defendant "kept and maintained" the monument in the alleged condition, could be ministerial in nature, involving no exercise of judgment, because the allegations, read in the light most favorable to the plaintiffs, imply that the defendant's employees or agents did not properly secure the monument to its base at the time of installation.
Because there is a genuine issue of material fact as to whether the acts complained of specifically the alleged malfeasance and the failure to inspect, were discretionary or ministerial in nature, the court cannot decide as a matter of law that the defendant is entitled to governmental immunity from tort liability in performing these acts in its operation and maintenance of the park. The court denies, therefore, the defendant's motion for summary judgment on this count.[20]
In count four, the plaintiff parent seeks present and future damages for medical expenses for the treatment of the minor plaintiff. The defendant argues that the court must grant summary judgment on this derivative count if the court rules in its favor with regard to the other counts. Because the court has denied the defendant's motion for summary judgment on the other counts, the court also denies its motion for summary judgment on this count.
Because counts two, three and four of the complaint involve genuine issues of material fact, the defendant's motion for summary judgment on these counts are denied.
Howard F. Zoarski Judge Trial Referee